Filed 7/22/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S194107 |
| v. | ) | |
| | ) | Ct.App. 4/3 G042923 |
| LEE VINCENT COTTONE, | ) | |
| | ) | Orange County |
| Defendant and Appellant. | ) | Super. Ct. No. 06HF1734 |
| _____ | ) | |

Under Evidence Code section 1108,[1] in the trial of sexual offense charges, evidence the defendant committed another sexual offense may be admissible to prove that the defendant has a propensity to engage in such conduct. This case raises two questions.

First, if the proffered conduct occurred before the defendant had reached the age of 14, must the prosecution establish that the defendant knew the conduct was wrongful and was thus capable of committing a crime, as required by Penal Code section 26, subdivision One (Penal Code section 26(One))? We conclude such proof is required because section 1108 only permits admission of evidence of another sexual offense that amounts to "a crime" under state or federal law.

---

[1]      Subsequent undesignated statutory references are to the Evidence Code.

Second, does the trial court or the jury ultimately decide if the proffered conduct amounted to a crime? The Court of Appeal held that the question is for the jury and imposed a sua sponte duty to instruct on Penal Code section 26(One)'s presumption of incapacity as it relates to evidence admitted under section 1108 (1108 evidence). We reject that conclusion.

In laying the foundation for admissibility, the prosecution must demonstrate that previously unadjudicated conduct amounts to a crime.[2] That showing presents a mixed question of law and fact. The trial court rules on the legal issues relating to admissibility and resolves the preliminary factual question of capacity under section 405, subdivision (a). Once the evidence is admitted, the jury does not reassess these determinations. The jury does determine if the act occurred, as well as the weight and significance of the evidence. To that end, the jury may take into account the defendant's age in considering whether the evidence demonstrates his propensity to commit the charged offenses. The trial court, however, need not instruct the jury on that point absent a request. Accordingly, we reverse the Court of Appeal, which found prejudicial instructional error.

---

[2] For purposes of clarity, we note the following. Under Welfare and Institutions Code section 602, subdivision (a), a minor is not charged with or convicted of a crime, but rather is subject to a juvenile adjudication of wardship based on a finding that the minor "violate[d] any law . . . defining crime . . . ." (Welf. & Inst. Code, § 602, subd. (a); accord, *People v. Burton* (1989) 48 Cal.3d 843, 861; *In re Joseph B.* (1983) 34 Cal.3d 952, 955.) Regardless of this nomenclature, however, when a minor is alleged to have violated a criminal statute, all elements of that "crime" must be proven beyond a reasonable doubt. (Welf. & Inst. Code, § 701; *In re Winship* (1970) 397 U.S. 358, 368; *In re Eddie M.* (2003) 31 Cal.4th 480, 487.) Because no wardship proceedings were ever filed against Cottone, the allegations remained unadjudicated at the time of his adult trial.

## I. BACKGROUND

### A. *Charged Offenses*[3]

Defendant was charged with committing four lewd acts upon his niece, B.,[4] who was 19 years old at the time of trial. She testified that defendant began molesting her in 1998, when she was eight. During school breaks and summer vacation, B. stayed overnight with defendant and his wife, Jeanie. Being away from home, B. was afraid to sleep alone all night. So the three shared a bed, with B. sleeping between the two adults.

The first night of this arrangement, B. woke up to find that defendant had placed his hand under her clothing and was massaging her "vagina," breasts, and buttocks. Although B. moved away from defendant, she did not say anything because she was frightened. She did not awaken Jeanie or tell her what had happened. The next night defendant touched B. the same way. B. did not report the incidents when she returned home because she remained afraid.

B. estimated that she stayed at the Cottone's home two to four days at a time, three to four times a year for approximately four years. Defendant touched B. the same way every time she spent the night, using his hand to rub her breasts, buttocks, and "vagina." The touching did not involve penetration and defendant never forced B. to touch him.

When B. was 11 or 12 years old, her sister and her cousin, C., also began spending the night with the Cottones. B. estimated that the three girls slept over together approximately 10 or 15 times, sharing a bed in the guestroom. Every

---

**3** At defendant's first trial, the jury was unable to reach a verdict. We summarize the facts and procedural history from the second trial.

**4** Each count alleged that B. was under 14 when the acts occurred (Pen. Code, § 288, subd. (a)) and that each offense involved substantial sexual conduct (Pen. Code, § 1203.066, subd. (a)(8)).

3

night, defendant entered the dark room, sat on the bed, and pulled back B.'s covers. Defendant touched her according to his pattern. B. did not tell her sister or cousin what had happened.

At some point, B. told her mother that she no longer wanted to stay with the Cottones, but did not explain her reluctance. Her mother responded that Jeanie was expecting her, so she should go. Defendant eventually stopped abusing B. in 2003.

In 2006, B. and her mother went to a family event at defendant's home. On the way, B.'s mother complained about the way defendant made fun of B.'s brother. B. said, " 'Well, if you think that's bad, you should—you don't know what he has done to me[.]' " She then told her mother about defendant's conduct.

B. *Expert Testimony*

Dr. Laura Brodie, a clinical and forensic psychologist, testified for the prosecution. She described child sexual abuse accommodation syndrome, a condition often seen in sexually abused children. Unfamiliar with the facts of this case, Brodie testified generally that it was not unusual for a child to delay reporting abuse for several years.

C. *1108 Evidence*

Before trial, the prosecution offered evidence under section 1108 that defendant had sexually abused his sister, L. The incident occurred in 1966, when L. was around five and defendant was nearly 14. No juvenile court allegations were filed.

Defendant opposed the prosecutor's motion, arguing that the event was remote, dissimilar, and unduly prejudicial. (§ 352.) Citing Penal Code section 26(One), he also argued that the evidence should be excluded because, as a minor under the age of 14 (under 14), he was presumed incapable of committing a crime.

4

L. testified at an in limine hearing. One day when L. and a friend were playing, defendant invited them to play a game called "giggy-giggy." The friend declined and went home. Defendant carried L. downstairs to the basement, where he and his brothers had bedrooms. They were alone. As L. sat on his shoulders, defendant put his finger in her underpants and touched her vaginal area.

The court allowed L. to testify. It found that defendant was at least 13 years and 10 months old at the time of the offense. Clear and convincing evidence showed defendant understood the wrongfulness of his conduct, based on his age and the circumstances of the crime.[5] The parties' briefing and argument was limited to whether the trial court should admit or exclude the evidence. Defendant did not argue that the issue of his capacity should be submitted to the jury with appropriate instructions.

L.'s trial testimony was similar to that given in limine.

D. *Defense Case*

C. is defendant's granddaughter and B.'s cousin. She related that she often spent the night at defendant's home with B. and her sister, and that the three girls usually slept together. Defendant never tried to molest her. B. never mentioned defendant's behavior to C.

Defendant also offered the testimony of two cousins who were in their mid-20s at the time of trial. They testified that when they were girls about B.'s age they frequently spent the night at defendant's home. He never touched either of them inappropriately.

Defendant's wife, Jeanie, testified that beginning in 1999 and for the next couple of years, B. frequently spent the night at their home and asked to join

---

[5] The trial court also found defendant's molestation of L. to be highly probative despite its remoteness, and thus not barred by section 352.

defendant in various outings. When B. visited alone, she would sleep with Jeanie and defendant in their bedroom. Jeanie was unaware of any alleged misconduct until B.'s mother told her of the accusations. She contradicted B.'s testimony that Jeanie wore earplugs while sleeping.

E. *Further Trial and Appellate Proceedings*

On its own motion, the court gave CALCRIM No. 1191, which covered consideration of 1108 evidence and explained the burden of proof. Defendant did not request, nor did the trial court give, an instruction directing the jury to assess defendant's capacity to commit that offense under Penal Code section 26(One).

The jury convicted defendant on all counts and found true the special allegations. Defendant was sentenced to six years in prison.

The Court of Appeal reversed the judgment for instructional error. It imposed a sua sponte duty to instruct that the prosecution must prove by clear and convincing evidence that defendant appreciated the wrongfulness of his conduct admitted under section 1108. Applying the prejudicial error standard of *Chapman v. California* (1967) 386 U.S. 18, the court concluded that the instructional omission was not harmless beyond a reasonable doubt.

## II. DISCUSSION

A. *Penal Code Section 26(One) Applies to Evidence Admitted Under Section 1108*

Penal Code section 26(One) creates a rebuttable presumption that a child under 14 is incapable of committing a crime.[6] We have not previously considered whether this legal presumption and attendant burden of proof come into play at a

---

[6] Penal Code section 26 provides in relevant part: "All persons are capable of committing crimes except those belonging to the following classes: [¶] One— Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness."

6

later criminal trial where the prosecution offers evidence under 1108 of an unadjudicated sexual offense committed when the defendant was under 14. The Court of Appeal noted that section 1108 authorizes admission of evidence that defendant committed another " '[s]exual offense' " amounting to "a crime." (§ 1108, subd. (d)(1).) It reasoned logically that "for prior sexual offense evidence to be admitted the offense must be a crime, and to be a crime, a child under 14 years of age must appreciate the wrongfulness of his conduct," as required by Penal Code section 26(One). The Attorney General contested this point below. Here, however, she concedes that the Court of Appeal correctly applied the Penal Code's capacity requirement to 1108 evidence. We accept the concession.

We begin with a brief overview of the relevant statues and legal principles. As set forth below, the question of capacity under Penal Code section 26(One) for a minor under 14 involves a legal standard, a rebuttable presumption, and a burden of proof. Throughout this opinion, we sometimes refer to the sum of these statutory requirements under the umbrella of "capacity."[7]

We have long held that a finding of capacity is a prerequisite to an adjudication of wardship for a minor under 14. (*In re Gladys R*. (1970) 1 Cal.3d 855, 867.) The prosecution may rebut Penal Code section 26(One)'s presumption of incapacity by producing " 'clear proof' " that the minor appreciated the wrongfulness of the conduct when it was committed, "as demonstrated by [the child's] age, experience, conduct, and knowledge . . . ." (*In re Manuel L.* (1994) 7 Cal.4th 229, 232 (*Manuel L.*).) "Clear proof" in this context means clear and

---

[7]     All references to "capacity" or "incapacity" herein refer to the legal presumption set out in Penal Code section 26(One) respecting children under 14. Our discussion of capacity is not intended to govern other aspects of Penal Code section 26.

convincing evidence. (*Ibid*.) While knowledge of wrongfulness may not be inferred from the act alone, " 'the attendant circumstances of the crime, such as its preparation, the particular method of its commission, and its concealment' may be considered. [Citation.] Moreover, a minor's 'age is a basic and important consideration [citation], and, as recognized by the common law, it is only reasonable to expect that generally the older a child gets and the closer [he] approaches the age of 14, the more likely it is that [he] appreciates the wrongfulness of [his] acts.' [Citation.]" (*People v. Lewis* (2001) 26 Cal.4th 334, 378 (*Lewis*).)

Although Penal Code section 26(One) requires the prosecution to prove that a minor under 14 understood the wrongfulness of his conduct, capacity is not an "element" of the underlying offense that must be proved beyond a reasonable doubt. (*Manuel L., supra*, 7 Cal.4th at p. 238.) Rather, the presumption of incapacity operates to exempt the minor from legal responsibility. (*People v. Roberts* (1972) 26 Cal.App.3d 385, 388; see also 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Defenses, § 4, pp. 428, 430.) In this respect, capacity is similar to the issue of sanity, which is not a fact material to guilt but is a " 'prerequisite to a valid judgment and sentence.' " (*Manuel L.*, at pp. 238-239.) Accordingly, the prosecution need not rebut the presumption of incapacity beyond a reasonable doubt. Instead, it must satisfy the distinct standard of proof by clear and convincing evidence. (*Id*. at pp. 236, 238.)

Here, however, the issue of capacity did not arise as a prerequisite to a valid judgment. Instead it was a foundational question to the admissibility of evidence proffered under section 1108. That section permits evidence that the defendant committed other sexual offenses to prove his propensity to commit the charged sexual offenses. (§ 1108, subd. (a); *People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1013 (*Reliford*); *People v. Falsetta* (1999) 21 Cal.4th 903, 915, 917-920

8

(*Falsetta*).)  The provision specifically defines " '[s]exual offense' " as "a *crime* under the law of a state or of the United States" (§ 1108, subd. (d)(1), italics added), that involves certain listed offenses or types of conduct, including a lewd or lascivious act on a child (§ 1108, subd. (d)(1)(A); Pen. Code, § 288).

Considering these statutes together, we hold that the presumption of incapacity set forth in Penal Code section 26(One) applies when the prosecution seeks to prove that the defendant committed an unadjudicated sexual offense before reaching age 14.  The presumption must be overcome before the evidence may be admitted.  This conclusion is dictated by the statutory language.  Section 1108 authorizes admission of such evidence only if the conduct amounts to a "crime."  (§ 1108, subd. (d)(1).)  As the Court of Appeal reasoned, "for prior sexual offense evidence to be admitted the offense must be a crime, and to be a crime, a child under 14 years of age must appreciate the wrongfulness of his conduct."

B.      *The Trial Court Determines Whether the Prosecutor Has Rebutted the Presumption of Incapacity*

Despite their agreement that Penal Code section 26(One)'s presumption of incapacity applies to the evidence proffered here, the parties disagree about whether the trial court or the jury should ultimately resolve that question.  The Attorney General argues that, upon objection, the court conclusively determines whether the defendant had the requisite capacity as a fact preliminary to admitting the evidence.  (See § 405, subd. (a).)  Defendant counters that there is no preliminary fact for the court to determine.  Rather, the jury must find by clear and convincing evidence that the defendant was capable of committing a crime because he understood the wrongfulness of his conduct.  Unless it makes that finding, the jury cannot consider the evidence in resolving the charges.  Thus, we must resolve two questions:  who decides, and by what standard?

9

We conclude that the trial court evaluates whether a defendant had the capacity to understand the wrongfulness of his or her conduct, under Penal Code section 26(One), as a threshold question to admitting an unadjudicated sexual offense. Section 1108 addresses the admissibility or inadmissibility of this evidence. (See *People v. Villatoro* (2012) 54 Cal.4th 1152, 1161 [discussing §§ 1101 & 1108]; *Villatoro,* at pp. 1169, 1172 (conc. & dis. opn. of Corrigan, J.); *id.* at p. 1182 (conc. & dis. opn. of Liu, J.).) The language of section 1108 itself demands that, before the conduct may be admitted, it must amount to a "crime." This is a legal question essential for admissibility. "All questions of law (including but not limited to questions concerning the construction of statutes and other writings, the admissibility of evidence, and other rules of evidence) are to be decided by the court." (§ 310, subd. (a).) For example, the trial court decides whether the charging document alleges a "sexual offense" before it can consider admitting 1108 evidence to prove propensity. (See, e.g., *People v. Story* (2009) 45 Cal.4th 1282, 1289, 1291, 1294-1295; *People v. Walker* (2006) 139 Cal.App.4th 782, 802; cf. *People v. Kelii* (1999) 21 Cal.4th 452, 455-457 [trial court must determine whether a prior conviction qualifies as a serious felony for purposes of the "Three Strikes Law"].)

The legal question of admissibility, in turn, involves a factual component. To establish "criminal" conduct, the prosecution must show that a minor under 14 knew his or her conduct was wrong at the time it was committed. (Pen. Code, § 26(One).) "The factual nature of the issue, however, does not determine whether the issue must or should be submitted to a jury." (*People v. Betts* (2005) 34 Cal.4th 1039, 1048.) On the contrary, the trial court must resolve all questions of fact preliminary to the admission of evidence. (§ 310, subd. (a).)

Evidence Code sections 402 through 405 govern the adjudication of " 'preliminary fact[s],' " which are facts "upon the existence or nonexistence of

10

which depends the admissibility or inadmissibility of evidence." (§ 400.) At issue here are sections 403 and 405.**8** Section 403, subdivision (a)(1) provides that when "[t]he *relevance* of . . . proffered evidence depends on the existence of [a] preliminary fact," the "proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact . . . ." (Italics added.) Section 405 applies to "preliminary fact determinations not governed by Section 403 or 404." Subdivision (a) of section 405 states that "[w]hen the existence of a preliminary fact is disputed, the court shall indicate which party has the burden of producing evidence and the burden of proof on the issue as implied by the rule of law under which the question arises. The court shall determine the existence or nonexistence of the preliminary fact and shall admit or exclude the proffered evidence as required by the rule of law under which the question arises."

Comments by the Assembly Committee on the Judiciary outline the primary distinctions between sections 403 and 405.**9** (1 Assem. J. (1965 Reg. Sess.) p. 1712 et seq. (Assembly Committee Comments); see Stats. 1965, ch. 299, § 2, p. 1297 [enacting Evid. Code].) "The preliminary fact questions listed in subdivision (a) [of Evidence Code section 403] . . . are not finally decided by the judge because they have been traditionally regarded as jury questions. The

---

**8** Section 402 outlines the procedure for a hearing to determine foundational and other preliminary facts. Section 404 deals with a claim of privilege against self-incrimination. Neither is at issue in this case and we do not discuss them further.

**9** We frequently have looked to such comments as indicative of legislative intent. (*People v. Riccardi* (2012) 54 Cal.4th 758, 817, fn. 29; *People v. Wiley* (1995) 9 Cal.4th 580, 586, fn. 3; *Kaplan v. Superior Court* (1971) 6 Cal.3d 150, 158, fn. 4.)

11

questions involve the credibility of testimony or the probative value of evidence that is admitted on the ultimate issues.  It is the jury's function to determine the effect and value of the evidence addressed to it. . . .  [T]he judge's function on questions of this sort is merely to determine whether there is evidence sufficient to permit a jury to decide the question."  (Assem. Com. com., reprinted at 29B pt. 1B West's Ann. Evid. Code (2011 ed.) foll. § 403, p. 18 (West's Annotated Evidence Code); accord, *People v. Lucas* (1995) 12 Cal.4th 415, 466-467 (*Lucas*).)  Generally, "all relevant evidence is admissible."  (§ 351.)  Yet, "[s]ometimes the relevance of evidence depends on the existence of a preliminary fact."  (*Lucas*, at p. 466.)  A judge screening proffered evidence under section 403 excludes it only upon a finding that the showing of such a preliminary fact " 'is too weak to support a favorable determination by the jury.' "  (*Lucas*, at p. 466, quoting 3 Witkin, Cal. Evidence (3d ed. 1986) Introduction to Evidence at Trial, § 1716, p. 1675.)

Defendant's identity as the person who committed an uncharged act is a classic example of a preliminary fact necessary to establish relevance.  If it cannot be shown that the defendant did the uncharged act, the fact that "somebody" did it is irrelevant.  (See, e.g., *People v. Wade* (1959) 53 Cal.2d 322, 330-331, disapproved on another point in *People v. Carpenter* (1997) 15 Cal.4th 312, 381-382 (*Carpenter*); see also *Lucas, supra*, 12 Cal.4th at p. 466 [citing examples].)  Under section 403, then, the trial court performs a threshold screening function to shield the jury from evidence that is so factually weak as to undermine its relevance.  (*Lucas*, at p. 466.)

By contrast, section 405 "deals with *evidentiary rules* designed to withhold evidence from the jury because it is too unreliable to be evaluated properly *or because public policy requires its exclusion*."  (Assem. Com. com., reprinted at West's Ann. Evid. Code, *supra*, foll. § 405, p. 41, italics added.)  Some examples

12

cited in the Assembly Committee comments to this section include the mental capacity of a witness to testify, the admissibility of a confession, the qualification of an expert, the existence of an evidentiary privilege, and the admissibility of hearsay evidence under a recognized exception. (Assem. Com. com. at pp. 41-43.) The procedures outlined in section 405 reflect the general policy that it is for the trial court to decide questions of law, " 'including the admissibility of testimony, [and] the facts preliminary to such admission . . . .' " (Assem. Com. com. at p. 41, quoting former Code of Civ. Proc., § 2102, superseded by § 310.) The rule protects the defendant by ensuring that the trial court reviews the legal basis for admissibility before evidence is submitted to the jury. (Assem. Com. com. at p. 44.) Under section 405, the court's ruling on the question of admissibility is final and not subject to the jury's redetermination. (Assem. Com. com. at p. 43.) As explained in the committee comments: "The rules of admissibility being applied by the judge under Section 405 are designed to withhold evidence from the jury because it is too unreliable to be evaluated properly or because public policy requires its exclusion. The policies underlying these rules are served only by the exclusion of the evidence. No valid public or evidentiary purpose is served by submitting the admissibility question again to the jury." (*Ibid*.)

Finally, the Assembly Committee comments note: "To eliminate uncertainties of classification, subdivision (a) lists the kinds of preliminary fact questions that are to be determined under the standard prescribed in Section 403. And to eliminate any uncertainties that are not resolved by this listing, various Evidence Code sections state specifically that admissibility depends on 'evidence sufficient to sustain a finding' of certain facts. See, e.g., Evidence Code §§ 1222, 1223, 1400." (Assem. Com. com., reprinted at West's Ann. Evid. Code, *supra*, foll. § 403, p. 18.)

13

In light of this statutory scheme, we hold that whether a defendant understood the wrongfulness of an unadjudicated sexual offense allegedly committed before age 14 is an evidentiary question for the court to determine under section 405. Competence under Penal Code section 26 is not included in section 403, subdivision (a)'s list or in the Assembly Committee on Judiciary's comments to that section. Nor does section 1108 include the other uncertainty-resolving phrase, "evidence sufficient to sustain a finding."

The requirement that 1108 evidence amount to a crime reflects a policy limitation on the admission of evidence akin to other rules of exclusion covered under section 405. The general public policy on character or propensity evidence is that it is *not* admissible to prove conduct on a given occasion. (§ 1101, subd. (a); see also *Falsetta*, *supra*, 21 Cal.4th at p. 913.) Section 1108 creates a narrow exception to this rule based on the recognition that " '[t]he propensity to commit sexual offenses is not a common attribute among the general public.' " (*People v. Johnson* (2010) 185 Cal.App.4th 520, 532, fn. 9, quoting Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended July 18, 1995, p. 8.) " ' "In child molestation actions a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people." ' " (*Johnson*, at p. 532, fn. 9, quoting Sen. Com. on Criminal Proc., Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 15, 1995, p. 6.)

At the same time, the Legislature placed a significant restriction on the scope of section 1108 by limiting admissibility to certain enumerated sexual offenses amounting to crimes. A bill analysis before the Assembly Committee on Public Safety observed that "[t]his legislation would not generally authorize the admission of evidence of other 'bad acts' by the defendant, but only evidence of

14

criminal sexual offenses of the same type as those with which he is formally charged." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 882 (1995-1996 Reg. Sess.) as amended May 4, 1995, p. 2.) The express limitation in the statute means that "[n]o far-ranging attacks on the defendant's character can occur under section 1108." (*Falsetta, supra,* 21 Cal.4th at p. 916.) It reflects a policy choice striking a balance between the general ban on character evidence to prove conduct, and an exception permitted in strictly limited circumstances. The trial court ensures that the policy choice is honored by performing its screening function under section 405. "If the court is in doubt, if the prosecution has not persuaded it of the [criminal nature of the conduct], Section 405 requires the court to exclude the [evidence]." (Assem. Com. com., reprinted at West's Ann. Evid. Code, *supra*, foll. § 405, p. 43.)

Conversely, the proffer of this kind of evidence generally does not raise a relevance question under section 403, assuming the defendant's identity as the perpetrator can be shown. The conduct in this case, which involved touching the vaginal area of his young sister, was manifestly relevant on the question of whether defendant sexually assaulted another young female relative. (*Falsetta, supra*, 21 Cal.4th at p. 915; *People v. Soto* (1998) 64 Cal.App.4th 966, 991.) Indeed, " '[s]uch evidence "is [deemed] objectionable, not because it has no appreciable probative value, *but because it has too much*." . . . [Citations.]' " (*Ibid*., quoting *People v. Alcala* (1984) 36 Cal.3d 604, 631.) The requirement that these other acts of sexual misconduct constitute crimes revolves around policy, not a case-specific assessment of relevance. Accordingly, when a defendant objects to the admission of 1108 evidence on the ground that the conduct does not amount to

15

a crime, the court reviews any preliminary fact necessary to that determination under section 405, not section 403.[10]

Respecting the burden of proof, we accept the Attorney General's concession that the prosecution must prove by clear and convincing evidence that defendant appreciated the wrongfulness of the unadjudicated sexual offense offered under section 1108. This is the standard the trial court applied.

Section 405, subdivision (a) directs the trial court to apply "the burden of proof on the issue as implied by the rule of law under which the question arises." The general rule is that preliminary fact determinations affecting the admissibility of evidence under section 405 are subject to proof by a preponderance of the evidence unless otherwise provided by law. (*People v. Tewksbury* (1976) 15 Cal.3d 953, 963, 966; see also § 115.) The same standard generally applies to proof of unadjudicated conduct admitted under section 1108. (See *Reliford, supra,* 29 Cal.4th at pp. 1015-1016; cf. *Carpenter, supra,* 15 Cal.4th at p. 382 [discussing proof of evidence admitted under § 1101, subd. (b)], *Carpenter* superseded by statute on other grounds as recognized in *Verdin v. Superior Court* (2008) 43

---

[10] By comparison, the provisions of section 405 would not necessarily apply to evidence admitted under section 1101, subdivision (b). That section, unlike section 1108, does not require the conduct to be a crime, but rather applies more broadly to "evidence that a person committed a crime, civil wrong, or other act." (§ 1101, subd. (b).) The appellate courts have recognized that admission of such evidence under section 1101, subdivision (b) may entail preliminary fact determinations under section 403, subdivision (a)(1), such as the fact that the conduct occurred and the defendant's connection to it. (See, e.g., *People v. Garelick* (2008) 161 Cal.App.4th 1107, 1115; *People v. Simon* (1986) 184 Cal.App.3d 125, 129-131 (*Simon*); accord, *Huddleston v. United States* (1988) 485 U.S. 681, 687-689 [analyzing procedure for admitting other crimes evidence under Fed. Rules of Evid., rule 404(b), 28 U.S.C.].) This analysis differs from the trial court's legal and factual determination that the defendant's conduct amounts to a crime under section 1108 as a predicate to admissibility.

Cal.4th 1096, 1106-1107; *People v. Medina* (1995) 11 Cal.4th 694, 763 [same].)

Nonetheless, the question of capacity, which is a predicate to admissibility, arises under Penal Code section 26(One), which explicitly imposes a distinct standard of proof by clear and convincing evidence. (*Manuel L., supra*, 7 Cal.4th at p. 232.) It is that standard the court must apply in resolving whether a minor under 14 appreciated the wrongfulness of his conduct and was thus capable of committing a crime.

C.     *The Jury Does Not Reassess Defendant's Capacity When Considering 1108 Evidence*

Our application of section 405 in this context does not mean the jury cannot consider the defendant's age and mental state at the time of his juvenile conduct. Section 405, subdivision (b) anticipates that, in some instances, a preliminary fact decided by the trial court will also bear on a fact at issue in the action. (See Assem. Com. com., reprinted at West's Ann. Evid. Code, *supra*, foll. § 405, p. 42.) Accordingly, we must examine the jury's role in assessing 1108 evidence.

While a sexual offense must qualify as a crime to be admissible under section 1108, the defendant does not stand trial on that uncharged conduct and cannot be convicted of it.[11] Such evidence is admitted only as *circumstantial evidence* supporting an *inference* that the defendant committed the charged offense, by demonstrating the defendant's propensity and bolstering the victim's credibility. (*Reliford, supra,* 29 Cal.4th at pp. 1012-1014; *Falsetta, supra,* 21 Cal.4th at pp. 911, 915.) "[A] jury may not convict the defendant based *solely* on

---

[11]     This case does not involve the circumstance presented in *People v. Villatoro*, *supra*, 54 Cal.4th 1152. There we held that section 1108 authorizes the jury to draw propensity inferences from other *charged* sexual offenses. (*Villatoro,* at pp. 1164-1165.)

evidence of a prior sexual crime." (*People v. Loy* (2011) 52 Cal.4th 46, 72, italics added.)

As with evidence admitted under section 1101, the jury must determine whether the defendant committed the act in question. Only if the jury so concludes by a preponderance of the evidence can it consider such evidence in deciding whether the defendant is guilty of the charged crimes. (*Estelle v. McGuire* (1991) 502 U.S. 62, 73-74; *People v. Ewoldt* (1994) 7 Cal.4th 380, 405.) It must also consider the defense response to the evidence. "[W]hen evidence of other crimes or acts has been admitted for some purpose an accused should be allowed to explain or deny the transactions." (*People v. Zerillo* (1950) 36 Cal.2d 222, 230.) For example, the defendant may introduce evidence of a previous acquittal of criminal charges relating to acts admitted under section 1101 or 1108. (*People v. Griffin* (1967) 66 Cal.2d 459, 465; *People v. Mullens* (2004) 119 Cal.App.4th 648, 665-667, 669.) The defendant also may challenge the inference the prosecution urges should be drawn from the conduct by calling into question his state of mind or motive (*Simon, supra,* 184 Cal.App.3d at pp. 130-131) or by introducing competing evidence of good character (*People v. Callahan* (1999) 74 Cal.App.4th 356, 375-379).[12] Finally, the jury must decide whether that act demonstrates the defendant's propensity to commit the charged sexual offenses. If not, the jury may accord the evidence no weight. (*Reliford, supra,* 29 Cal.4th at p. 1014; *Falsetta, supra,* 21 Cal.4th at p. 920.)

None of these questions requires the jury to reassess the trial court's determination that the prosecution established the legal foundation required to

---

[12]     As previously noted (*ante*, at p. 16, fn. 10), evidence admitted under section 1101, subdivision (b) need not constitute a crime. That distinction does not change the analysis here, however.

support admissibility by rebutting Penal Code section 26(One)'s presumption of incapacity. Rather, in enacting section 1108, the Legislature simply contemplated that the jury would make a " ' "rational assessment . . . of evidence so admitted." ' " (*Falsetta, supra*, 21 Cal.4th at p. 912, quoting Letter by Assemblyman Rogan regarding Assem. Bill No. 882 (1995-1996 Reg. Sess.) published in 2 Assem. J. (1995-1996 Reg. Sess.) p. 3278, reprinted at 29B pt. 3B West's Ann. Evid. Code (2009 ed.) foll. § 1108, p. 352.) This interpretation is consonant with section 406, which makes clear that the weight and credibility of admitted evidence remain proper determinations for the jury.[13] The Law Revision Commission comment to section 406 notes: "Other sections in this article provide that the judge determines whether proffered evidence is admissible, *i.e.*, whether it may be considered by the trier of fact. Section 406 simply makes it clear that the judge's decision on a question of admissibility does not preclude the parties from introducing before the trier of fact evidence relevant to weight and credibility." (7 Law Revision Com. Rep. (1965) 1, 70, reprinted at West's Ann. Evid. Code, *supra*, foll. § 406, p. 53; see *People v. Thornton* (1974) 11 Cal.3d 738, 767, overruled on other grounds in *People v. Flannel* (1979) 25 Cal.3d 668, 685, fn. 12, and *People v. Martinez* (1999) 20 Cal.4th 225, 232-238.) While it is up to the jury to assess the weight of the evidence, that analysis differs from assessing the threshold legal question of admissibility. The judge determines whether the proffered evidence is legally admissible because the required foundational element of capacity has been satisfied. The jury does not revisit that legal ruling.

In this regard the respective roles of judge and jury are similar to those at play when a defendant's confession is offered against him. The defendant may

---

[13] Section 406 provides: "This article does not limit the right of a party to introduce before the trier of fact evidence relevant to weight or credibility."

seek to bar its admission arguing that the statement was obtained in violation of *Miranda v. Arizona* (1966) 384 U.S. 436, and its progeny. (See § 402, subd. (b).) If the *Miranda* requirements were violated, "public policy [and binding precedent] require[] its exclusion." (Assem. Com. com., reprinted at West's Ann. Evid. Code, *supra*, foll. § 405, p. 41.) In ruling on such a motion, the trial court determines whether, as a matter of law, the statement is barred by Fifth Amendment jurisprudence. If the statement is admitted, the jury is not then instructed on the nuanced legal principles related to interrogation and waiver. This is because the jury is not permitted to revisit the court's legal determination of admissibility. (*People v. Burton* (1971) 6 Cal.3d 375, 389-390, disapproved on another ground in *People v. Lessie* (2010) 47 Cal.4th 1152, 1168; see also § 405, subd. (b)(2).) As we observed in *People v. Thornton, supra*, 11 Cal.3d 738, "section 405 of [the Evidence Code] clearly indicates that the court's decision on the issue of admissibility of confessions is final and not subject to a 'second look' by the jury . . . ." (*Id*. at p. 767, fn. omitted.)

The defense is free, however, to "present evidence of the circumstance under which a confession . . . was made where such evidence is relevant to the credibility of the statement, even though such evidence may duplicate to some degree the evidence presented to the court on the issue of admissibility." (Assem. Com. com., reprinted at West's Ann. Evid. Code, *supra*, foll. § 405, p. 44.) Based on such evidence, the defense may argue that the defendant did not make the statement or that the evidence carries no weight because the defendant was confused, fatigued, or tricked, thus depriving the statement of any probative value. "But the jury's sole concern is the truth or falsity of the facts stated, not the admissibility of the statement." (*Ibid*.; accord, *People v. Jimenez* (1978) 21 Cal.3d 595, 607, disapproved on another ground in *People v. Cahill* (1993) 5 Cal.4th 478, 510, fn. 17; *Jackson v. Denno* (1964) 378 U.S. 368, 386, fn. 13.)

20

The principles are the same in other section 405 determinations cited by the Assembly Committee comments. If the court finds a witness competent to testify, opposing counsel may still argue that the witness's testimony was not credible or that the witness lacked personal knowledge. (§ 701; Assem. Com. com., reprinted at West's Ann. Evid. Code, *supra*, foll. § 405, p. 41; *Lewis, supra,* 26 Cal.4th at pp. 360-361; *People v. Anderson* (2001) 25 Cal.4th 543, 572-574.) The court may find an expert qualified to give an opinion, and that the opinion is founded on sound logic and reliable theory or technique. Yet an opponent may argue that the jury should not accept it. (§§ 720, 801, subd. (b), 802; Assem. Com. com., at p. 41; *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 769-773; *People v. Penny* (1955) 44 Cal.2d 861, 866; 3 Witkin, Cal. Evidence (5th ed. 2012) Presentation, § 204, p. 301; see also *People v. Pizarro* (2003) 110 Cal.App.4th 530, 553-558 & fns. 28 & 29, disapproved on another ground in *People v. Wilson* (2006) 38 Cal.4th 1237, 1245-1246, 1251.) The court may find a proffered hearsay statement factually satisfies an exception permitting its admissibility, but counsel may still argue that the statement is unreliable. (*People v. Blacksher* (2011) 52 Cal.4th 769, 834-835; Assem. Com. com., at pp. 42, 44.) In each case the jury examines the evidence to determine what, if anything, it proves. It does so as a matter of logic, not by applying the legal rules for competence, expert qualification, or hearsay exceptions.

Similarly, the defendant's youth may inform the jury's assessment of what the 1108 evidence proves. The circumstances of the conduct, including the defendant's age, may lead the jury to conclude that the evidence does little to demonstrate a propensity to commit the charged sex crime. Accordingly, the jury would be free to reject the inference the prosecution urged. This important factual assessment differs from the court's legal inquiry on the question of admissibility, including its finding that the prosecution has rebutted the presumption of

21

incapacity set forth in Penal Code section 26(One). Once the 1108 evidence is admitted, the jury is not permitted to reassess the court's evidentiary ruling. It simply determines whether, as a *factual matter*, the evidence establishes the defendant's propensity to commit the charged sexual offenses.

In reaching a different conclusion, the Court of Appeal relied heavily on *Lewis, supra,* 26 Cal.4th 334. There, we briefly touched on the application of Penal Code section 26(One) to an uncharged violent crime offered as aggravating evidence in a capital trial. But *Lewis* is cabined to its facts and provides no meaningful assistance here. Specifically, we did not resolve in *Lewis* whether the jury must decide the capacity question because the defendant did not claim error on that ground.

In *Lewis*, the prosecution offered penalty phase evidence that the defendant had committed a previous murder when he was 13 years 9 months old. (Pen. Code, § 190.3, factor (b).)[14] The court admitted the evidence. It instructed the jury to assess the defendant's capacity to commit the prior murder and to apply the beyond-a-reasonable-doubt standard in doing so. (*Lewis*, *supra*, 26 Cal.4th at pp. 379-380.) When the trial court subsequently denied the defendant's motion to reduce the death verdict, it made an express finding " 'beyond any reasonable doubt' " that the defendant knew the prior murder was wrong when he committed it. (*Id*. at p. 377.)

On appeal, we concluded that, even though the earlier killing had occurred 16 years before, it was possible for the trial court and the jury to assess the defendant's capacity, and that the defendant received a fair adjudication on the

---

**14** That section sets forth, as an aggravating factor, "[t]he presence or absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence."

question.  (*Lewis, supra*, 26 Cal.4th at pp. 379-380.)  We noted that the jury instructions properly explained the law as set out in Penal Code section 26.  (*Lewis,* at p. 380.)  The defendant also argued the trial court failed to determine the capacity question as a preliminary fact before admitting the evidence.  In addressing that claim, we assumed, but did not decide, that the trial court was obligated to make such a preliminary fact determination.  We then concluded any error was harmless because the trial court later made that very finding in denying the defendant's motion to reduce the death verdict.  (*Id*. at pp. 377, 380.)  Finally, we rejected the defendant's challenge to the evidentiary sequence.  In that context, we summarily characterized as "unsupported" the defendant's "claim that determining a minor's capacity under Penal Code section 26 should be considered the same as determining the admissibility of a confession as a foundational or preliminary fact.  (Evid. Code, § 402, subd. (b) [upon a party's request, a court must first determine the admissibility of a confession or admission outside the presence and hearing of the jury].)"  (*Lewis,* at p. 380.)

The Court of Appeal "interpret[ed] *Lewis* as holding that pursuant to [Penal Code] section 26, the issue of whether a minor appreciates the wrongfulness of his conduct is a question for the trier of fact."  We did not so hold.  Because the trial court in *Lewis* submitted the issue of the defendant's capacity to the jury (*Lewis, supra*, 26 Cal.4th at pp. 379-380), we had no occasion to consider whether it must necessarily do so (see *People v. Soto* (2011) 51 Cal.4th 229, 247).  Moreover, our brief observation that the defendant's argument equating the issue of a minor's capacity to the admissibility of a confession was "unsupported" (*Lewis, supra*, 26 Cal.4th at p. 380), sheds little light on the issue now before us.  We did not discuss the point in depth, given our conclusion that any failure to hold a preliminary fact hearing was harmless on that record.  (*Ibid*.)

23

Now that the question is squarely presented, we hold that upon the defendant's timely objection, the trial court must find by clear and convincing evidence that the defendant had the capacity to commit an unadjudicated juvenile offense before admitting that evidence under section 1108. "In enacting section 1108, the Legislature recognized that '[g]iven its highly inflammatory nature, uncharged misconduct is admissible after various safeguards are met.' " (*People v. Villatoro*, *supra*, 54 Cal.4th at p. 1165, quoting Sen. Com. on Crim. Proc., Analysis of Assem. Bill No. 882 (1995–1996 Reg. Sess.) as amended May 15, 1995, p. 4.) This policy is served by the requirement that the conduct amount to a crime. If the conduct occurred when the defendant was under 14, the question of capacity must be resolved. Once the trial court has made that legal determination, section 405 does not permit the jury to delve into the nuances of evidentiary rules. Instead, the jury turns to the essential question of what, if anything, the evidence proves.

D.   *The Trial Court Was Not Required to Instruct the Jury, Sua Sponte, to Consider Whether Defendant Appreciated the Wrongfulness of the Sexual Offense Admitted Under Section 1108*

Our analysis of the evidentiary issue necessarily informs the trial court's instructional duties respecting the defendant's capacity to commit a sexual offense admitted under section 1108. Here, on its own motion, the trial court instructed the jury with CALCRIM No. 1191, explaining the proper use of the 1108 evidence. The instruction stated that the prosecution must prove by a preponderance of the evidence that defendant committed the offense against his sister. If that burden was not met, the evidence must be disregarded. If the burden was met, the jury could, but was not required, to conclude that defendant had a propensity to commit sexual offenses. Defendant did not request an instruction on capacity.

24

The Court of Appeal imposed a sua sponte duty to instruct the jury that "it had to determine by clear and convincing evidence whether Cottone appreciated the wrongfulness of his conduct," which it characterized as a "general legal principle[] closely and openly connected with the facts in the case." This analysis fails. As previously explained, the admissibility of other sexual offenses amounting to crimes under section 1108, and the resolution of necessarily preliminary facts, are questions for the court to resolve, subject to review on appeal. The jury has an important task in evaluating the evidence. That task does not include reconsidering the court's legal conclusion.

Defendant urges a minor's incapacity is a "defense," and emphasizes that the trial court has a sua sponte duty to instruct on defenses that the defendant is relying on or that are supported by substantial evidence and are not inconsistent with the defendant's theory of the case. (See *People v. Anderson* (2011) 51 Cal.4th 989, 996; *People v. Salas* (2006) 37 Cal.4th 967, 982.) His argument is misplaced.

This case does not involve the trial court's sua sponte duty to instruct the jury on a *defense* to a *charged crime*. Rather, it presents the much narrower issue of how the jury evaluates 1108 evidence. We have long recognized that "the trial court ordinarily has no sua sponte duty to instruct the jury as to the admissibility or use of other crimes evidence." (*Falsetta, supra,* 21 Cal.4th at p. 924; accord, *Reliford, supra*, 29 Cal.4th at p. 1015, fn. 2; *People v. Collie* (1981) 30 Cal.3d 43, 63-64; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1316-1318.) This principle is consistent with section 355, which provides that the trial court, "upon request," shall instruct the jury about evidence admitted for a limited purpose.

More specifically, the jury's role in considering the defendant's age at the time of an act admitted under section 1108 is not consonant with any recognized category of sua sponte instruction. Whether the evidence proves what the

25

prosecution urges is a question of fact and logic requiring no additional sua sponte instruction. (See *Carpenter, supra*, 15 Cal.4th at p. 383.) Notably, the trial court is under no sua sponte duty to instruct that a jury must determine other preliminary facts, such as identity, that bear on the ultimate relevance of the evidence, or to disregard such evidence unless the jury finds that the preliminary fact exists. (See *Lewis, supra*, 26 Cal.4th at p. 362 [discussing § 403, subd. (c)(1)]; *Carpenter,* at p. 383.)**15**

Our conclusion is consistent with cases explaining the duty to instruct on the use of a defendant's violent criminal activity offered as a circumstance in aggravation in a capital case. (Pen. Code, § 190.3, factor (b).) In that context, we have long held that "[a] trial court has no sua sponte duty to instruct on the elements of 'other crimes' offered under section 190.3, factor (b)." (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 324.) Such instructions are "not vital to a proper consideration of the evidence on the issue of penalty" (*People v. Anderson, supra,* 25 Cal.4th at p. 588) because "the ultimate question for the sentencer is simply whether the aggravating circumstances, as defined by California's death penalty law ([Pen. Code,] § 190.3), so substantially outweigh those in mitigation as to call for the penalty of death, rather than life without parole" (*Anderson*, at p. 589). We have noted that "a defendant, for tactical reasons, may not want the penalty phase instructions overloaded with a series of

---

**15** We do note that such matters are covered in the standard CALCRIM instruction given to this jury. (CALCRIM No. 1191.) That instruction told the jury to disregard the 1108 evidence in its entirety if the jury was not convinced by a preponderance of the evidence that it had been proved. The instruction also emphasized that the jury was not required to draw an inference of propensity from the evidence. We do not suggest that the giving of that instruction is inappropriate. We merely clarify that, ordinarily, there is no sua sponte obligation to do so.

lengthy instructions on the elements of alleged other crimes because he may fear that such instructions could lead the jury to place undue emphasis on the other crimes rather than on the central question of whether he should live or die." (*People v. Davenport* (1985) 41 Cal.3d 247, 281; accord, *Anderson,* at p. 588.) Defense counsel took a similar approach to the 1108 evidence admitted here.[16]

Accordingly, we decline to impose a sua sponte duty to instruct that the jury reconsider a fact relating to evidentiary *admission*. Counsel remains free to argue that the evidence does not support the propensity inference. If the defense relies on the defendant's age to undermine the propensity conclusion, it may request a proper pinpoint instruction on that topic. (See *People v. Anderson*, *supra*, 51 Cal.4th at pp. 996-997; *People v. Saille* (1991) 54 Cal.3d 1103, 1119.) But such an instruction should not include a reference to Penal Code section 26(One) or its presumption. Because there was no sua sponte duty to instruct, there was no error.

---

[16] Defense counsel argued directly and persuasively against drawing an inference of propensity from such conduct: "And what is it [L.] says? She is on her brother's shoulders and he touches her vagina. Is that anything like what is alleged here? Does that tell you that he has a propensity to go after little girls because when he is 13 with his sister on his shoulders he's touching her vagina? That's like saying when he was 13 years old he was playing with matches and you know what you should infer from that, he started the station fire where a bunch of people got killed. That is how much sense it makes. ¶ Think about it, this prosecution has looked back from now from the time of this trial backwards, it's almost a half a century, to show propensity, to show this attraction to young girls, that is what he says this is for. Think of all the young girls who spent the night there. Nothing. Nothing. Nothing. ¶ . . . They put on a span of nearly half a century. What do they have that shows a propensity? An act when he is prepubescent in the '60s. That does not show a propensity or prove he did this or [to corroborate B.]"

27

## III. DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Cottone

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 195 Cal.App.4th 245
**Rehearing Granted**

_____

**Opinion No.** S194107
**Date Filed:** July 22, 2013

_____

**Court:** Superior
**County:** Orange
**Judge:** M. Marc Kelly

_____

**Counsel:**

Law Offices of William J. Kopeny and William J. Kopeny for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons and Julie L. Garland, Assistant Attorneys General, Steven T. Oetting, Gil Gonzalez, James H. Flaherty III and Meredith Strong, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William J. Kopeny
Law Offices of William J. Kopeny
8001 Irvine Center Drive, Suite 400
Irvine, CA  92618-2956
(949) 754-2944

James H. Flaherty III
Deputy Attorneys General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2196