Filed 12/4/15  In re E.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re E.G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>              v.<br><br>E.G.,<br><br>    Defendant and Appellant. | F070335<br><br>(Super. Ct. No. 12CEJ600188-2A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Kimberly Nystrom-Geist, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Rachelle A. Newcomb and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and  Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P.J., Detjen, J. and Franson, J.

The court adjudged appellant E.G. a ward of the court after it sustained allegations charging him with arson of property. (Pen. Code, § 451, subd. (d).)[1] On October 10, 2014, the court set appellant's maximum term of confinement at three years and committed him to a preadolescent program for 63 days.

On appeal, appellant contends the juvenile court prejudicially erred when it denied his motion to exclude his statements to fire investigators. We affirm.

## FACTS

On October 26, 2013, appellant, who was then 11 years old, was cited for setting fire to an abandoned mattress in an alley.

On September 4, 2014, the district attorney filed a petition charging appellant with arson of a structure. (§ 451, subd. (c).) On September 8, 2014, the district attorney amended the petition to charge appellant with arson of property.

At a jurisdictional hearing on September 26, 2014, appellant's mother testified that she taught appellant the difference between right and wrong and that appellant knew it was wrong to set other people's property on fire. She also testified that in 2012 appellant attended a class in fire safety and that he received a certificate from that class.

Fresno Fire Captain Joella Garcia testified that on October 26, 2013, at 1:00 p.m., she responded to an alley behind an apartment complex on a report of a possible fire and found an abandoned mattress with a charred area that was approximately two feet by three feet. Based on her investigation, she concluded that the mattress had been set on fire.

Fresno Police Officer Seng Yang testified that he also responded to the alley where the burnt mattress was located. Officer Yang spoke to a juvenile who told him the mattress had been burned by a juvenile whom he knew as "Ogre" and he provided the officer with an address. Officer Yang went to the address and spoke to appellant, who

---

[1] All further statutory references are to the Penal Code.

2.

acknowledged that he was "Ogre." Appellant told Officer Yang that he was playing with matches, lit a match as a joke, and then "got the mattress on fire." Appellant got scared and walked away.

Fresno Fire Department Investigator Floyd Wilding testified that during a follow-up investigation, he and Investigator Dansby went to appellant's address and found him sitting with other juveniles on the street curb in front of appellant's apartment. Wilding recognized appellant from a school photo he had obtained and asked him if he was E.G. Appellant hesitated and looked at his friends before looking back at Wilding and saying, "No." However, appellant's brother pointed at appellant and identified him.

According to Wilding, he asked appellant if he could talk to him and appellant agreed. Investigator Wilding further testified that he and appellant then walked 20 to 25 feet away "out of earshot" of the other juveniles, into a parking lot where he continued talking with appellant with Investigator Dansby at Wilding's side. Wilding testified he did not tell appellant he had to go with him, that he was under arrest, or that he was not free to leave. Wilding also testified that neither he nor Dansby did anything to prevent appellant from leaving.

At that point, the prosecutor sought to play a digital audio recording that Investigator Wilding made of his encounter with appellant. After defense counsel objected on *Miranda*[2] grounds, the court granted his request to voir dire the investigator. During voir dire, Investigator Wilding testified, in pertinent part, that he and Investigator Dansby were in uniform when he spoke to appellant. Wilding further testified that he told appellant he was there to talk about the fire, and that appellant had been told that a fire investigator might come speak with him. Investigator Wilding also acknowledged that he knew appellant was 11 years old and that Investigator Dansby stood next to Wilding as Wilding faced appellant while speaking with him.

---

**2**     *Miranda v. Arizona* (1966) 384 U.S. 436.

After the court overruled defense counsel's *Miranda* objection, the prosecutor played a portion of the recording of Investigator Wilding's encounter with appellant, which began as Wilding approached appellant as he sat with the other juveniles on the curb. Contrary to Investigator Wilding's testimony, the recording did not indicate that he asked appellant if he was willing to speak with him or that appellant expressly agreed to. Nor does it indicate that Wilding asked appellant to accompany him into the parking lot. Instead, the recording indicates that after telling appellant to remember the police officer from the other day, and that that was what he was there to talk to him about, Wilding told appellant to "come over here." They apparently then walked into the parking lot where Investigator Wilding asked appellant some preliminary questions and others that were unrelated to the burning of the mattress. Prior to asking appellant about the fire, Investigator Wilding told appellant that he had read the police report and he asked appellant if the officer had told him that an investigator was going to talk with him, which appellant acknowledged. Investigator Wilding then began asking appellant about the fire. Appellant told Wilding that he found the matches he used to light the fire on the ground in the alley. Appellant was "curious to do a fire" so he lit the mattress on fire. Appellant put the matches and a piece of paper on the mattress and lit the paper, which ignited the matches. Appellant took off and one of his brothers put the fire out.

After the above portion of the recording was played, the court admitted the recording into evidence. The prosecutor also submitted into evidence a certificate that indicated appellant had completed a fire safety class.

## DISCUSSION

Appellant contends that a consideration of the relevant factors clearly supports a conclusion that the questioning of appellant by Investigator Wilding amounted to a custodial interrogation. Thus according to appellant, the court erred when it denied his motion to suppress his statements to Wilding. Appellant further contends that reversal of the judgment is required because it cannot be determined beyond a reasonable doubt that

4.

the introduction of these statements did not contribute to the court's finding that appellant committed arson. We need not determine whether the questioning of appellant by Investigator Wilding was a custodial interrogation because we conclude that any error in allowing the prosecutor to introduce these statements was harmless.

> " … [A]n officer's obligation to administer *Miranda* warnings attaches only where there has been such a restriction of freedom of movement as to render the suspect 'in custody.' [Citation.] This determination is based on the objective circumstances of the interrogation. [Citation.] Two inquiries are essential to this determination: first, what are the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. [Citation.]" (*In re Joseph H.* (2015) 237 Cal.App.4th 517, 530-531 (*Joseph H).*) "For *Miranda* purposes, custodial status arises if a person has been 'taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.]" (*People v. Elizalde* (2015) 61 Cal.4th 523, 531 (*Elizalde*).)

> " … The objective circumstances of the interrogation are examined, not the "'subjective views harbored by either the interrogating officers or the person being questioned."' [Citation.]" (*People v. Kopatz* (2015) 61 Cal.4th 62, 80.) "'Nor is the requirement of warnings to be imposed simply because ... the questioned person is one whom the police suspect.…' [Citation.]" (*Stansbury v. California* (1994) 511 U.S. 318, 324.)

> " … Although no one factor is controlling, the following circumstances should be considered: '(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.' [Citation.] Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview. [Citation.]" (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403-1404.) "[S]o long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is

consistent with the objective nature of that test." (*J.D.B. v. North Carolina* (2011) 131 S.Ct. 2394, 2406, fn. omitted.)

In reviewing the juvenile court's decision on a *Miranda* issue, we accept that court's determination of disputed facts if supported by substantial evidence, but we independently decide whether the statements at issue were obtained in violation of *Miranda.* (*Joseph H., supra,* 237 Cal.App.4th at p. 530.) We also accept the juvenile court's evaluations of witness credibility. (*Elizalde, supra,* 61 Cal.4th at p. 530.) We may not set aside the juvenile court's ruling on the *Miranda* issue unless it is "palpably erroneous." (*People v. Duren* (1973) 9 Cal.3d 218, 238.)

The following circumstances support a finding that appellant was not in custody: appellant was not formally arrested, the investigators did not physically prevent appellant from leaving, the interrogation was relatively brief, lasting approximately 10 minutes, and, as argued by the prosecutor, it was not aggressive. However, there were numerous circumstances that support a finding that appellant was in custody. Appellant was only 11 years old. He was approached by two uniformed fire department investigators and questioned by one with the other one present. Investigator Wilding rejected appellant's attempt to avoid being questioned about the fire which appellant manifested by denying he was the person Wilding was looking for. Wilding invoked the authority of the police by reminding appellant that a police officer had told appellant an investigator would be contacting him and that that was why Wilding was there to talk to appellant about the fire. Wilding did not seek appellant's consent to question him about the fire, nor did appellant expressly consent to being questioned. Investigator Wilding did not obtain appellant's consent to move to the parking lot to be questioned, he directed him to go there. By moving appellant to the parking lot, Wilding isolated appellant from his friends. Further, Investigator Wilding let appellant know that he was considered the perpetrator of the fire based on his prior statements to Officer Yang. Although we are strongly inclined to conclude from these circumstances that appellant was in custody, we

need not resolve this issue because the failure to give appellant *Miranda* warnings was harmless.

"We must reverse a conviction that rests on evidence from an interrogation conducted in violation of *Miranda* unless admission of the evidence was harmless beyond a reasonable doubt." (*People v. Bradford* (2008) 169 Cal.App.4th 843, 854.) Prior to being contacted by the fire department investigators appellant had already admitted to Officer Yang that he set the mattress on fire with matches, claiming that he did it as a joke. Although appellant's statements to Investigator Wilding added more detail to how appellant set fire to the mattress, the gist of his statement to Officer Yang was that he was the perpetrator. Further, although due to appellant's age the prosecutor had to prove appellant appreciated the wrongfulness of his conduct (*People v. Cottone* (2013) 57 Cal.4th 269, 280), appellant's mother testified that she taught appellant right from wrong and that he knew that it was wrong to burn other people's property. Additionally, the prosecutor presented evidence that appellant successfully completed a fire safety class. Thus, any error in admitting appellant's statements to Investigator Wilding was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.