Filed 7/25/16  P. v. Banks CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067022 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE327592) |
| SEAN PATRICK BANKS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel B. Goldstein, Judge.  Affirmed.

George L. Schraer for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

The People charged defendant Sean Patrick Banks with first degree burglary with intent to commit rape and/or forcible sexual penetration (Pen. Code,[1] §§ 459 & 460, count 2), forcible rape (§ 261, subd. (a)(2), count 4), two counts of forcible sexual penetration (§ 289, subd. (a), counts 1 and 3), rape of an intoxicated person (§ 261, subd. (a)(3), count 5), and attempting to dissuade a witness from prosecuting a crime (§ 136.1, subd. (b)(2), count 6.). The People also specially alleged as follows: (1) as to counts 1, 3 and 4, Banks committed the crime against more than one victim (§ 667.61, subds. (b), (c), & (e)); (2) as to count 2, another person was present in the residence during the commission of the burglary (§ 667.5, subd. (c)(21); (3) as to counts 3 and 4, Banks committed the crime during the commission of a burglary with the intent to commit rape and/or forcible sexual penetration (§ 667.61, subds. (a), (b) & (c)); and (4) as to count 6, Banks committed the crime while released from custody on bail (§ 12022.1, subd. (b)).

Banks pleaded not guilty to all charges and allegations. The jury found Banks guilty on counts 1 through 5 and found all special allegations on those counts to be true. It found Banks not guilty on count 6. The court sentenced Banks to an aggregate term of 37 years to life in prison.

Banks appeals, contending the trial court erred by: 1) admitting into evidence an e-book found on his computer about how to get women into bed, 2) failing to instruct the jury the crime of sexual penetration with an object is a specific intent crime, and 3)

---

[1]     Unless otherwise noted, all further statutory references are to the Penal Code.

instructing the jury the mistake of fact defense required his belief in the mistaken fact be reasonable. For reasons we explain, we affirm the judgement of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

Banks met R.O. on a dating Web site in spring of 2009 and told her his name was Ryan. After communicating for a couple of weeks, they met in person. On their third date, they had dinner at a restaurant. They shared a bottle of wine during dinner and each had a shot of alcohol after dinner. After the shot, R.O. blacked out and had no recollection of what occurred until she regained consciousness later that evening at her home with her pants and underwear down and Banks having sex with her. R.O. did not intend to have sex that night as she was suffering from significant pain and discomfort due to a medical condition. She immediately told Banks to stop and to leave the house, which he did.

Five days later, R.O. reported the incident to the Web site's customer service line. She did not report it to law enforcement until February 2013, when she saw in the news allegations Banks had assaulted another woman.

### B

Banks met C.C. online in the summer of 2012 and told her his name was Rylan Butterwood. Banks read to her from an e-book on a desktop computer at his residence in July 2012. He told her the writer was a genius, he had used lines from the book and they had worked. C.C. did not know the title of the book, but understood it was about getting

3

women to do something sexual with someone in whom they would not normally be interested. She did not believe it was about getting women to do so against their will.

C

Banks met K.K. on a Christian dating Web site in October 2012 and told her his name was Rylan. K.K. was 22 years old and Banks was 37 but listed his age as 31 or 32.

In November 2012, Banks went to K.K.'s home around 9:00 p.m. with bottles of alcohol and soda. K.K. told Banks she did not want to drink alcohol, but Banks insisted and she eventually had one sip. They sat on a couch in the living room and began kissing. Banks attempted to lay K.K. down on the couch, but she resisted and told him to slow down. They stopped kissing, but a few minutes later Banks abruptly pushed K.K.'s legs apart, put his hand down her pants, and digitally penetrated her vagina. K.K. told him to stop and that she did not want to have sex, but he did not stop. Although K.K. refused to go to the bedroom with Banks, he grabbed her arm and pulled her off the couch and into the bedroom. K.K. was scared he would hurt her if she resisted or screamed.

In the bedroom, Banks placed his forearm across K.K.'s chest, removed her pants, and again digitally penetrated her vagina. Despite K.K. telling him to stop and that she did not want to have sex, Banks penetrated K.K.'s vagina with his penis. K.K. screamed loudly and Banks stopped. He left the apartment soon after, took the bottles of alcohol and soda that he had brought, and then sent K.K. a text message indicating he had never arrived at her residence because he had gotten lost.

4

D

The La Mesa Police Department searched Banks's residence in January 2013 and seized two laptop computers, several portable storage devices, and a MacBook laptop computer belonging to Banks. A computer forensic analyst with the Regional Computer Forensic Laboratory (RCFL) found an e-book on the MacBook entitled "How to Get the Women You Desire Into Bed - A Down and Dirty Guide to Dating and Seduction for the Man Who is Fed Up with Being Mr. Nice Guy" (the e-book). The file had a creation date of September 17, 2004, and a last access date of June 28, 2012. The analyst also found instances of the same file with the same time stamps on an external hard drive.

At trial, the court admitted the e-book into evidence over Banks's objection. During closing argument, the prosecutor read portions of the e-book to the jury and pointed out similarities between Banks's conduct with R.O. and K.K., statements he made to police and passages in the e-book. In response, defense counsel discussed the forensic evidence and C.C.'s testimony and argued the e-book was simply a distraction because Banks never read it.

DISCUSSION

I. *ADMISSION OF THE E-BOOK*

Evidence is relevant, and therefore potentially admissible, if it tends to prove, logically, naturally or by reasonable inference, a material element at issue, such as intent or motive. (Evid. Code, §§ 210, 350; *People v. Daniels* (1991) 52 Cal.3d 815, 856.) Although evidence of prior acts is not admissible to prove conduct on a specific occasion, it is admissible to prove motive, preparation, intent, knowledge or absence of mistake.

5

(Evid. Code, § 1101, subd. (b); *People v. Robertson* (2012) 208 Cal.App.4th 965, 989.) The court may, however, exclude evidence if the prejudicial effect of the evidence outweighs its probative value. (Evid. Code, § 352.)

Where the relevance of a piece of evidence depends on the existence of a preliminary fact, the proponent of the evidence has the burden to produce evidence sufficient to sustain a finding as to the existence of the preliminary fact. (Evid. Code, § 403.) The jury is typically required to make the ultimate determination as to the existence of a preliminary fact as such questions involve the credibility of testimony or the probative value of evidence. (*People v. Cottone* (2013) 57 Cal.4th 269, 283-284 (*Cottone*); *People v. Lucas* (1995) 12 Cal.4th 415, 466–467.) The court is simply to decide whether there is evidence sufficient to permit the jury to determine the existence of the preliminary fact or, put another way, if the evidence is simply too weak to support a favorable finding by the jury. (*Cottone*, at pp. 283-284.)

We review the trial court's ruling on the admissibility of evidence under an abuse of discretion standard, which applies whether the trial court's ruling is in limine or during trial. (*People v. Williams* (1997) 16 Cal.4th 153, 197–198.) The trial court has broad discretion when deciding whether the prejudicial effect of evidence outweighs its probative value. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Here, Banks incorrectly asserts the trial court erred in admitting the e-book because the prosecution failed to lay an adequate foundation supporting the conclusion he actually read the e-book. There was no dispute the e-book was in Banks's possession as the e-book was on both a password-protected MacBook and a portable hard drive

6

belonging to him. The title of the e-book indicates it relates to getting women "into bed" and is intended for men that are "Fed Up with Being Mr. Nice Guy." The trial court reasoned Banks's thinking when he downloaded the e-book was circumstantial evidence of his intent, which Banks put at issue by pleading not guilty and arguing both victims consented. The e-book was therefore probative of his intent and the credibility of his consent defense. (See *People v. Memro* (1995) 11 Cal.4th 786, 864-865 (*Memro*) [holding magazines containing sexually explicit stories and photographs, "presented in the context of defendant's *possession* of them," admissible as relevant to intent], italics added, partially overruled on another ground in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.)[2]

Banks's argument the prosecution had to prove he actually read the e-book in order for the court to admit it is unavailing. The California Supreme Court has found possession alone sufficient to support the admissibility of reading materials that are probative of the defendant's intent. (*Memro, supra*, 11 Cal.4th at p. 864.) Even the Ninth Circuit case upon which Banks relies, *United States v. Curtin* (9th Cir. 2007) 489 F.3d 935, suggests that simple possession of reading material generically similar to a charged crime *may be admissible* against the possessor defendant to prove motive or

---

[2]     We note the court in *Memro* admonished the jury not to consider certain admitted reading material as evidence the defendant was evil or disposed to commit certain types of crime. (*Memro, supra*, 11 Cal.4th at p. 866.) The court here did not provide such an instruction, in part based on Banks's objection to an instruction with such limiting language, and Banks does not assert the court should have given such an instruction on appeal so we do not address it.

intent, particularly where the material is more akin to a "how-to manual," as the e-book at issue here is, than fantasy. (*Id*. at pp. 956, 961; see *Allen v. United States* (9th Cir. 2003) 341 F.3d 870, 885-887 (*Allen*) [finding Nazi-related literature in defendant's possession properly admitted].)[3]

Further, even if the relevance of the e-book depended upon Banks having actually read it, the evidence was sufficient to sustain a finding by the jury that he had. (See Evid. Code, § 403; *Cottone*, *supra*, 57 Cal. 4th at pp. 283-284.) The trial court found certain passages in the e-book, such as comments on the use of religion and alcohol, were circumstantial evidence Banks read and used the e-book, C.C. testified Banks read to her from an e-book about getting women into bed, and there were similarities between Banks's conduct, statements he made and passages in the e-book. Banks argues he could not have read the e-book to C.C. because the last access date of the e-book on the MacBook was before Banks and C.C. met, but it was reasonable for the jury to conclude Banks read the e-book from a different computer that was not seized by the police because Banks had copies of the e-book on at least two devices and he read to C.C. from a desktop computer rather than a laptop. Further, even if the jury was not convinced it was the e-book that he read to C.C., the jury could have reasonably concluded Banks had an interest in reading material about getting women into bed, supporting an inference he also read the e-book.

---

3     Banks also relies on *United States v. Waters* (9th Cir. 2010) 627 F.3d 345 (*Waters*) but *Waters* is both not binding and distinguishable as the defendant in *Waters*, unlike Banks, disputed ever possessing the materials at issue. (*Id.* at 354.)

Finally, admission of the e-book was not prejudicial. Evidence is not prejudicial simply because it is damaging. (*People v. Bolin* (1998) 18 Cal.4th 297, 320.) Although the e-book contains suggestions that may have disturbed some members of the jury, it did not contain sexually explicit stories or graphic images rising to the level of pornographic materials courts have found admissible as probative of intent despite their prejudicial effect. (See *Memro, supra,* 11 Cal.4th at pp. 864-865 [sexually explicit magazines in defendant's possession admissible despite their prejudicial nature]; see also *Allen, supra*, 341 F.3d at pp. 886-887 [finding Nazi reading material in defendant's possession, among other items, properly admitted to prove racial animus despite potentially prejudicial nature].) Further, the statements in the e-book were no more disturbing than the testimony of R.O. and K.K. regarding the details of the sexual crimes committed against them by Banks. Finally, to the extent the jury did not believe Banks read the e-book, diminishing its probative value, it was also less prejudicial for the same reason.

Whether Banks read the e-book, and what weight to give it, were questions properly submitted to the jury, and the trial court did not abuse its discretion in determining the probative value of the e-book outweighed its potential prejudice. (See *Cottone*, *supra*, 57 Cal.4th at pp. 283-284.) Because we find there was no error in admitting the e-book, we need not address the standard for reversal.

## II. *JURY INSTRUCTIONS*

We review claims of instructional error de novo (*People v. Posey* (2004) 32 Cal.4th 193, 218) and review the instructions as a whole, in light of the trial record, to determine whether it is reasonably likely the jury understood the challenged instruction in

a way that undermined the presumption of innocence or tended to lighten the prosecution's burden of proving each element of each offense beyond a reasonable doubt. (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 30.)  A claim the court incorrectly or incompletely instructed the jury requires us to determine from the entire charge whether there is a reasonable likelihood the jury misconstrued or misapplied the instruction. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 182.)  When the trial court fails to include an essential element in one instruction, the court may cure the error by including the element in another instruction.  (*People v. Bolin*, *supra*, 18 Cal.4th at p. 328.)

Here, Banks asserts that the trial court committed reversible error with respect to two separate instructional errors:  1) it failed to instruct the jury the two counts of sexual penetration with an object are specific intent crimes, and 2) it erroneously instructed the jury the mistake of fact defense required his belief in the mistaken fact be reasonable.

A.  *Intent Required for Crime of Sexual Penetration Force, Fear or Threats*

Section 289, subdivision (a)(1)(A) makes it a crime to commit "an act of sexual penetration when the act is accomplished against the victim's will by means of force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person."  Subdivision (k)(1) defines "sexual penetration" as used in subdivision (a)(1)(A) as "the act of causing penetration, however slight . . . for the purpose of sexual arousal, gratification, or abuse . . . ."  The crime of unlawful sexual penetration therefore requires the accused to have had the specific intent to gain sexual arousal or gratification or to inflict abuse.  (*People v McCoy* (2013) 215 Cal.App.4th 1510, 1538 (*McCoy*); see *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167 (*ZarateCastillo*) [holding

10

the crime of forcible sexual penetration is a specific intent crime]; *People v. Ngo* (2014) 225 Cal.App.4th 126, 161-162 [holding that the definition of "sexual penetration" specifies the level of intent].) However, the intent is only required with respect to the penetration and the accused does not need to use force, violence, duress, menace, or fear with the intent to gain sexual arousal or gratification or to inflict abuse in order to commit the crime. (*McCoy,* at p. 1538.) CALCRIM No. 1045 accurately describes the crime of unlawful sexual penetration for the jury, including the requirement that sexual penetration must be for the purpose of sexual arousal or gratification or to inflict abuse. (*McCoy*, at p. 1540).

Here, the court properly instructed the jury with CALCRIM No. 1045 but also erred by instructing the jury, pursuant to CALCRIM No. 250, that the crime of sexual penetration was a general, as opposed to specific, intent crime. (See *ZarateCastillo, supra*, 244 Cal. App. 4th at p. 1167; *People v. Ngo*, *supra,* 225 Cal.App.4th at pp. 161-162.) However, Banks did not object to the instruction at trial and therefore forfeited the issue on appeal unless the error affected his substantial rights. (*McCoy*, *supra*, 215 Cal.App.4th at p. 1535).

As the instructional error here omitted an element of the crime on a peripheral issue never in dispute and on which the evidence is totally uncontradicted, the error was harmless even under the more rigorous federal standard set forth in *Chapman v. California* (1996) 386 U.S. 18, 24 (*Chapman*). (*People v. Flood* (1998) 18 Cal.4th 470, 506-507.) There are very few circumstances in which a person would intentionally penetrate another person for a purpose other than sexual arousal, gratification, or abuse.

11

(*Ngo, supra*, 225 Cal.App.4th at p. 163; see *ZarateCastillo, supra,* 244 Cal.App.4th at p. 1169.) Nothing in the record here supports any plausible theory or explanation suggesting Banks penetrated the victim for any purposes other than sexual arousal, gratification, or abuse. To the contrary, Banks claimed the victim engaged in consensual sexual acts. Thus, even under the more stringent *Chapman* standard, the error was harmless beyond a reasonable doubt and Banks forfeited the issue. (*ZarateCastillo, supra,* 244 Cal.App.4th at p. 1168.)

Banks's reliance on *Ho v. Carey* (9th Cir. 2003) 332 F.3d 587 in arguing that the error was not harmless is misplaced as *Ho* deals with the malice requirement of second degree murder and an instruction under which jurors could have incorrectly convicted the defendant even if they believed he acted in self-defense. (*Id*. at p. 596.) There is no such possibility of a different outcome based on the erroneous instruction in the present case.

B. *Mistake of Fact Instruction*

The court also instructed the jury as to mistake of fact with respect to forcible rape (count 4), rape of an intoxicated woman (count 5), and forcible sexual penetration with an object (counts 1 and 3), explaining in each instance, "[t]he defendant is not guilty [of the charged offense] if he actually and reasonably believed" that the woman was capable of or did consent to the act. Banks contends the court erred by including the word "reasonably." We disagree.

When raising a mistake of fact defense with respect to forcible rape the burden is on the defendant to prove he had a bona fide and *reasonable* belief the victim consented to sexual intercourse, thus establishing he did not have the requisite wrongful intent.

12

(*People v. Mayberry* (1975) 15 Cal.3d 143, 155 (*Mayberry*); see *People v. Williams* (1992) 4 Cal.4th 354, 360-361 [explaining instruction should not be given absent substantial evidence of equivocal conduct that would have led defendant to reasonably and in good faith believe consent existed].)  Banks argues the reasonableness requirement does not accord with the language of the Penal Code but the court in *Mayberry* expressly considered the Penal Code when establishing the defense in the context of forcible rape, recognizing section 20 requires a union of act and intent and section 26 therefore establishes one is incapable of committing a crime when one commits an act under a mistake of fact disproving intent.  (*Mayberry,* at pp. 154, 157; see *People v. Vogel* (1956) 46 Cal.2d 798, 801-803 [discussing commissioners' annotation to section 20 regarding shifting burden to defendant to prove he did not have requisite intent].)  The same reasoning employed by the court in *Mayberry* also applies to the nearly identical consent element of the additional charged offenses here, and the court did not err by including the word "reasonably" in the mistake of fact instructions.

Banks also argues the reasonableness requirement should not apply to the specific intent crime of sexual penetration but, as discussed *ante*, the specific intent required for sexual penetration relates only to the purpose of the sexual penetration and not to consent, the element negated by the mistake of fact defense.  Finally, *People v. Russell* (2006) 144 Cal.App.4th 1415, 1425-1427 upon which Banks relies, relates to the receipt of stolen property where the mistake relates to the specific intent required—

receipt with knowledge the property was previously stolen—and is therefore distinguishable.

As we find that there was no error, we need not determine whether such error constitutes reversible error.

DISPOSITION

The judgment is affirmed.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

PRAGER, J.[*]

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.