Filed 12/5/25  P. v. Pool CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>TOMAS YAH POOL,<br><br>　　　Defendant and Appellant. | A171476<br><br>(Mendocino County Super.<br> Ct. No. 21CR00080) |

After a hung jury resulted in the mistrial of a sexual assault case against defendant Tomas Yah Pool, for retrial, the district attorney consolidated the existing counts involving two victims with a late-discovered claim of sexual assault involving a third victim, Pool's biological daughter. The retrial resulted in convictions for six felony counts of sexual assault involving the three victims.  On appeal, Pool argues that consolidating the claim involving his daughter with the retrial of the claims of the two unrelated victims resulted in "gross unfairness" that requires reversal.  Pool also challenges the court's imposition of indeterminate life sentences and a $5,000 restitution fine and asserts that clerical errors in the abstract of judgment must be corrected.

We disagree with Pool's claim that the case consolidation resulted in gross unfairness and are not persuaded by Pool's challenges to his sentences

or the restitution fine, but we accept the Attorney General's concessions that the abstract of judgment must be corrected. We therefore direct the abstract of judgment be corrected and affirm Pool's convictions and corrected sentences.

## BACKGROUND

### I. Counts 1, 2, 3, and 4 (F.E.)

Between 2011 and 2012, Pool was friends with F.E.'s stepfather. The two families were "really close" and would take trips together. Pool's then-partner Lily would frequently babysit F.E. and F.E.'s little sister; Pool abused F.E. multiple times when Lily babysat.

F.E.'s "first memory" of the abuse was from when she was five years old. Pool had been driving his red "family" van; his son and F.E.'s sister were in the middle seats, and F.E. was sitting "all the way in the back" in the third row. Pool parked by a creek "where . . . nobody [could] see anything" and joined F.E. in the back row. While Pool's son and F.E.'s sister were still in the van, Pool "pulled [F.E.'s] pants down and [her] underwear down, and he started masturbating in front of [her]" and "rub[bing] his penis on [F.E.'s] . . . vagina." Eventually, Pool ejaculated. F.E. "asked him what it was," and Pool said that it was "something good for [her]."

After that first time, "it would keep happening." F.E. could not remember "exactly how many times it happened," but it happened "most of the times" that Lily babysat F.E. and her sister or when Pool drove the children to school. When F.E. would go to Pool's house, Pool would want her to sit on his lap, and F.E. "would start crying and tell [her] mom [she] didn't want to." She was always "really uncomfortable" around Pool. Pool told F.E. not to tell her mom or anyone else about the incidents or "he would do what he was doing to [F.E.] to [her] sister," which made F.E. "really scared."

2

Another time, F.E.'s family went on a road trip to Chicago with Pool and Lily. F.E. was in her child seat in the back row of the red van with Pool when Pool began touching her vagina. F.E. started crying, and her mother pulled over thinking F.E. had to use the bathroom. "Pool wanted [F.E.] to go to the bathroom with him," but F.E. did not want to, so she started crying again and told her mother she did not have to go to the bathroom.

When F.E. was in the first grade, she spent the weekend with Pool and Lily while her mom worked. Pool, Lily, Lily's baby, F.E., and F.E.'s younger sister were all in bed together. Lily left to nurse her baby. F.E. was on her side with Pool behind her and woke up when Pool began rubbing his penis against her back. F.E. "kind of cried a little" and asked Lily if she could switch sides. F.E. thought Lily understood why she wanted to move away from Pool because F.E. "had told [Lily] before that [Pool] was doing things to [F.E.]," and "[Lily] said she was going to talk to him." The next morning, Pool told F.E. "if [she] said anything, he would do it to [her] sister," who was two years younger than F.E., so "around five or six years old" at the time.

That same day, Pool drove F.E. to school. On the way, Pool pulled over near a hotel and tried to get into the back seat with F.E. F.E. "already knew . . . what he was going to do," so she started "kicking" Pool and "telling him no, that [she] didn't want him to touch [her]." Pool stopped and took F.E. to school. Pool did not touch F.E. again after that incident.

Other than Lily, F.E. did not tell her mother or anyone else what had happened until seventh grade when her sex education class spurred her to tell a classmate. F.E.'s classmate "started crying and broke down and hugged [F.E.]," telling her "that wasn't normal." That's when F.E. "connected the dots" and told her mom, who reported the incident to police.

## II. Count 5 (K.T.)

In 2019, Pool began living with a new partner, who had two children, including K.T., who was then almost four years old.[1]  When K.T.'s mother was at work, Pool would stay home with K.T. and her sister.  On these occasions, Pool would grab K.T.'s "cosita" or "little thing" with his hand; he would touch it with his thumb and "stir it."[2]  One time, while K.T.'s mother was cooking, Pool touched K.T. when he "found" her playing in her sister's bedroom.  Pool then saw K.T.'s sister, who told him, "enough" and asked for Pool's cell phone; Pool "said yes" and left the room.

In February 2020, K.T. told her mother that Pool had "cleaned" her: "She got down on all fours, her hands and her knees, and her buttocks were up."  K.T.'s mother confronted Pool, who said K.T. was lying.

In April 2020, K.T. began complaining to her mother "it hurts" when she went to the bathroom.  She developed lesions on her vagina, so her mother took her to see a doctor, who prescribed "some pills" but reportedly did not tell K.T.'s mother what was wrong.  A few days later, Child Protective Services (CPS) contacted K.T.'s mother and directed her to bring her daughters in to be interviewed, which she did.  CPS subsequently told the mother that K.T. "had been touched" and removed the children from the home.  K.T. tested positive for herpes simplex virus type 2.  Pool and K.T.'s mother also tested positive for herpes.  K.T.'s mother had previously noticed

---

[1] At the time of the second trial, K.T. was eight years old and did not remember "anything" from when she was four.  Thus, the jury was shown a video of K.T.'s forensic interview conducted in Spanish by the Ukiah Police Department and was provided with a translation of the interview.

[2] During the interview, K.T. gestured at her genitals to reference her vagina while using the terms "pumpia" or "cosita," the latter of which translates to "little thing."

similar lesions, "[l]ike little bumps," on Pool's penis. After CPS took custody of the children, K.T.'s mother confronted Pool, and he moved out the same day.

### III. Count 6 (D.B.)

In 2004, D.B. was four or five years old and living with her two older siblings, her mother, and Pool, who was her biological father. One day, Pool entered the bathroom when D.B. was bathing. Pool sat on the toilet and asked D.B. "to walk towards him." When D.B. stood up nude in the bathtub, Pool "grabbed" her arm and "pulled" her toward him. Pool placed D.B.'s hand on "his penis" and made her hand move "up and down" for at least a minute. While D.B. was holding Pool's penis, he "placed his hand on [her] back" and "started going forward with his hand towards [D.B.'s] rear end." Pool "moved his hand down [D.B.'s] backside." The incident ended when Pool "just got up and left and closed the door behind him, and [D.B.] stayed laying in the bath."

Not long after, D.B. and her family moved and stopped living with Pool. D.B. did not recall being touched "in a similar manner" after the move. D.B. did not tell her mother or anyone else about the incident in the bath until after she had learned of the other allegations against Pool.

### IV. Procedural History

In June 2022, the Mendocino County District Attorney proceeded to trial on a six-count felony information, alleging four counts of lewd or lascivious acts on a child under 14 (Pen. Code,[3] § 288, subds. (a) & (b); counts 1–4) and one count of attempted lewd or lascivious acts (§§ 664, 288, subd. (a); count 5) involving F.E., and one count of lewd acts (§ 288, subd. (a); count 6) with a great bodily injury enhancement (§§ 12022.7, subd. (d),

---

[3] Undesignated statutory references are to the Penal Code.

667.61, subd. (a)), involving K.T. The information also alleged a "Second Special Allegation," which sought indeterminate life sentences for "commission of the above offenses" pursuant to section 667.61.[4]

After hearing testimony related to the F.E. counts, the trial court dismissed count 2 (lewd act on a child) for insufficient evidence. The jury deadlocked on the remaining five counts—voting 10 to two in favor of guilt—and the court declared a mistrial in July 2022.

The following year, in August 2023, the prosecution learned that Pool's daughter D.B. claimed Pool had molested her in 2004 and filed a new felony complaint alleging one count of lewd act on a child under 14 using force (§ 288, subd. (b)(1)). The complaint did not include any One Strike allegations.

In March 2024, the trial court granted, without objection, the prosecution's motion to consolidate the new D.B. case with the original case involving F.E. and K.T.[5] Thereafter, the prosecution filed a consolidated six-count felony information that included four counts involving F.E. (§ 288, subd. (a) [counts 1 & 2]; § 288, subd. (b)(1) [count 3]; and §§ 664, 288,

---

[4] Section 667.61 is commonly known as the " 'One Strike' law" and "mandates indeterminate sentences for defendants who commit certain sexual offenses"—including lewd or lascivious acts in violation of section 288, subdivisions (a) and (b)—"under specified circumstances." (*People v. Betts* (2020) 55 Cal.App.5th 294, 299; § 667.61, subd. (c)(4), (8).) The second special allegation asserted two One Strike circumstances: that the crimes were committed against multiple victims (§ 667.61, subd. (e)(4)) and against a child under the age of 14 years old (§ 667.61, subd. (j)(2)).

[5] The deputy public defender present at the hearing on the People's motion to consolidate stated that she had not discussed the motion with Pool's trial counsel but would be "inclined to . . . submit on the consolidation subject to [trial counsel] filing a motion at a later date should he feel the need to sever." No motion to sever appears to have been filed.

6

subd. (a) [count 4]); one count with a great bodily injury enhancement involving K.T. (§ 288, subd. (a) [count 5]; §§ 12022.7, subd. (d), 667.61, subd. (a)); and one count with force involving D.B. (§ 288, subd. (b)(1) [new count 6]).

Between counts 5 and 6, the consolidated information included the One Strike second special allegation, alleging that "during the commission of the above offenses [Pool] committed an offense of [sections] 288(a) and/or 288(b) against more than one victim within the meaning of [sections] 667.61(b), 667.61(e)(4), and 667.61(j)(2)."

Pool proceeded to trial in July 2024; a jury found him guilty of the six charged counts and found true the great bodily injury allegation on count 5. The jury also found true the second special allegation that Pool "committed at least one sex offense against more than one victim."

In September 2024, the trial court sentenced Pool to an aggregate term of 123 years to life. The sentence included consecutive One Strike terms of 25 years to life (§ 667.61, subd. (j)(2)) for counts 1, 2, 3, and 5. The court also sentenced Pool to a consecutive One Strike term of 15 years to life on count 6 as prescribed by the version of section 667.61, subdivision (b) in effect in 2004. The court further sentenced Pool to the midterm of three years for count 4 (attempted lewd acts) and five years for the great bodily injury enhancement on count 5, both to be served consecutive to the indeterminate sentences. The court stayed other fines and fees based on Pool's "inability to pay" but imposed a $5,000 restitution fine (§ 1202.4, subd. (b)).

Pool filed a timely notice of appeal.

## DISCUSSION

On appeal, Pool challenges the consolidation of the charges concerning D.B. with those of F.E. and K.T.; the court's One Strike sentence on count 6;

7

the jury's One Strike finding on counts 1, 2, 3, and 5; and the restitution fine. Pool also asserts errors in the abstract of judgment and sentencing minutes that the Attorney General agrees should be corrected.

In our view, the case consolidation did not result in the "gross unfairness" required for reversal, and Pool fails to persuade us that the One Strike sentences and the restitution fine were imposed in error. But because we agree with the asserted clerical errors, we will direct the correction of the abstract of judgment to reflect that (1) Pool's sentence on count 6 is 15 years to life (not 25 years to life), and (2) the $300 fine pursuant to section 290.3 is stayed. As corrected, we will affirm the judgment.

## I. Consolidation

Pool claims the case consolidation resulted in gross unfairness[6] requiring reversal because it "caused a prejudicial spillover" by allowing "the prosecution to bootstrap a case that *actually failed* to a damning case that [Pool] molested his own daughter." In resolving such claims, we consider "whether events *after* the court's ruling," as opposed to at the time of consolidation, "demonstrate that joinder actually resulted in 'gross unfairness.' " (*People v. Merriman* (2014) 60 Cal.4th 1, 46.) A "judgment will be reversed . . . only if it is 'reasonably probable that the jury was influenced [by the [consolidation]] in its verdict of guilt.' " (*Id.* at p. 49.) "[T]o demonstrate the potential for a prejudicial spillover effect, [the] defendant

---

[6] Appellate review of a trial court's consolidation "proceeds in two steps." (*People v. Simon* (2016) 1 Cal.5th 98, 122.) The first step asks whether the trial court abused its discretion in consolidating the cases. (*Id.* at p. 122.) Because Pool concedes the trial court did not abuse its discretion in granting the People's motion to consolidate, we address only the second step, which requires Pool to show "that [consolidation] of the charges actually resulted in ' " 'gross unfairness' " ' amounting to a denial of due process." (*Id.* at p. 123.)

8

must show an 'extreme disparity' in the strength or inflammatory character of the evidence." (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1436.) "[A] mere imbalance in the evidence between the joined crimes does not signal a risk that one charge will be prejudicially bolstered." (*People v. Johnson* (2015) 61 Cal.4th 734, 752–753.)

Here, there is no extreme disparity between Pool's assaults of F.E. and K.T. and Pool's assault of his daughter. All the assaults were sexual in nature, were first committed against young children between three and five years old and took advantage of Pool's status as a father figure. Pool's claim of disparity rests on the questionable assumption that testimony concerning the single incident involving his daughter is more damning than the repeated sexual assault of the unrelated children, which included Pool rubbing his penis on the vagina and back of F.E., masturbating the children or having them masturbate him, ejaculation, and infecting K.T. with herpes—the transmission of which suggests a level of touching beyond the limited testimony of a three year old.

Pool suggests that "gross unfairness is obvious" because the jury failed to reach "a unanimous guilty verdict on a single charge" after the first trial, but the second jury "conveniently flipped" on the F.E. and K.T. charges after adding the D.B. claim. This argument minimizes the fact that the jury in the first trial voted 10 to two in favor of guilt and ignores the many evidentiary differences between the two trials. As the district attorney described, feedback from the first jury concerning their perceived inconsistencies in witness testimony allowed her to understand that explaining "how trauma affects" memory "would aid jurors going forward." Thus, at the second trial, the People introduced expert testimony of Child Sexual Assault Accommodation Syndrome to offer possible explanations for a sexual assault

9

victim's late reporting and for potential statement inconsistencies. Additionally, unlike the first jury, jurors in the second trial had the opportunity to hear Pool testify that, for instance, he had never been diagnosed with herpes and the "little pimples" on his genitals were "caused by ticks when [Pool] was a kid." As such, Pool's argument that the different jury verdicts demonstrate unfairness is conclusory speculation without foundation. (See *People v. Johnson, supra*, 61 Cal.4th at pp. 752–753 [rejecting "speculative" claim of prejudicial spillover effect based on the jury deliberating for seven days in a double murder case].)

Without citation to legal authority, Pool next complains that the given jury instructions further "enabled this grossly unfair bootstrapping" because the jury was told "that it could rely on its finding that [Pool] molested his own daughter to find that [he] was 'disposed or inclined to commit sexual offenses.'" Pool's argument does not directly challenge the constitutionality of the given instruction because he cannot: CALCRIM No. 1191B is legally authorized and consistent with the standards set forth in Evidence Code section 1108. (*People v. Meneses* (2019) 41 Cal.App.5th 63, 67–68 [rejecting due process claim that CALCRIM No. 1191B improperly " 'allowed the jury to rely on currently charged offenses to find that [defendant] had committed other currently charged offenses' "]; *People v. Villatoro* (2012) 54 Cal.4th 1152, 1160 [Evid. Code, § 1108 "allows, when proper, evidence of prior uncharged [and charged] sexual offenses to prove propensity"].) In any event, Pool's failure to object to the giving of these instructions before the trial court forfeits any related claim on appeal. (*People v. Franco* (2009) 180 Cal.App.4th 713, 719 ["Generally, a party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party fails to object in the trial court"].)

Moreover, Pool's argument of gross unfairness based on the joined charge naming his biological daughter as a victim overlooks the likelihood that such evidence could have been introduced at trial even if the cases had not been consolidated. (*People v. Barker* (2021) 10 Cal.5th 1044, 1089 [Evid. Code, § 1108 "permits evidence that a defendant accused of a sexual offense has committed another sexual offense, potentially showing a propensity to do so"].) Indeed, as the Attorney General argues, "in separate trials, the prosecution would only have had to prove the uncharged conduct by a preponderance of the evidence," and thus "joinder—which triggered the highest burden of proof in the law—was beneficial" to Pool. (See *People v. Cottone* (2013) 57 Cal.4th 269, 287 [jury may consider uncharged acts if proven "by a preponderance of the evidence"].)

In sum, because there was no "great disparity in the nature" of the charged offenses nor was any offense "likely to unduly inflame the jury," Pool fails to satisfy the "high burden" required to demonstrate gross unfairness. (*People v. Soper* (2009) 45 Cal.4th 759, 783–784 [defendant failed to show gross unfairness where the evidence "was relatively straightforward and distinct" and "independently ample to support defendant's conviction[s]"]; see also *People v. Lamb* (2024) 16 Cal.5th 400, 419 [no gross unfairness where " ' "strong evidence warranting conviction" supported all the charges' "].) Reversal is not warranted.

## II.  One Strike Law

The One Strike law (§ 667.61) "is an alternative sentencing scheme that applies when the prosecution pleads and proves specific aggravating circumstances in connection with certain sex offenses." (*In re Vaquera* (2024) 15 Cal.5th 706, 712 (*Vaquera*).) When a jury finds true a One Strike aggravating circumstance, "the offense generally will be punishable by an

11

indeterminate sentence of either 15 years to life or 25 years to life."
(*Vaquera*, at p. 713.) Otherwise, "the usual, determinative sentence for the sex crime applies." (*Ibid.* [for example, three, six, or eight years in state prison for violation of § 288, subd. (a)].)

Under the current One Strike law, when a "defendant has been convicted in the present case or cases of committing an offense . . . against more than one victim," the defendant is eligible for an indeterminate sentence of 15 years to life. (§ 667.61, subds. (b) & (e)(4).) Alternatively, a defendant who commits a qualifying offense "upon a victim who is a child under 14 years of age" is eligible for an indeterminate sentence of 25 years to life. (*Id.*, subd. (j)(2).)

Here, there is no dispute that the charged crimes (except for attempted lewd act on a child in count 4 (§§ 664, 288, subd. (a)) are qualifying offenses under the One Strike law. (§ 667.61, subd. (c)(4), (8); Stats. 1998, ch. 936, § 9 [count 6]; see also *People v. Rodriguez* (2012) 207 Cal.App.4th 204, 217 ["the One Strike law is . . . inapplicable to attempted sex crimes"].) Rather, Pool asserts error claiming the multiple victim circumstance (§ 667.61, subd. (e)(4)) was not properly alleged and the jury was not adequately instructed before finding true the circumstance alleging the victims were under the age of 14 (§ 667.61, subd. (j)(2)). Addressing each in turn, we see no error.

## A. Multiple Victim Circumstance (Count 6)

After trial and the entry of the jury's verdicts but before sentencing, Pool argued that he lacked notice of the potential One Strike term of 15 years to life on count 6 because the second special allegation included in the consolidated information was placed after count 5 but before count 6 and specifically stated it applied to "the above offenses." The prosecutor

12

attributed the placement to "a scrivener's error" and asserted "there was no question about whether or not the People were proceeding with Mr. Pool being on notice that we were asking for [the second special allegation] to apply to each victim." The court found "there was sufficient notice" that the second special allegation applied to count 6 and sentenced Pool accordingly. Pool renews his argument on appeal; after review of the record, we agree with the trial court.

"A defendant has a due process right to fair notice of any sentencing allegation that, if proven, will increase the punishment for a crime." (*Vaquera, supra*, 15 Cal.5th at p. 717.) In the One Strike context, "the touchstone of fair notice is whether the accusatory pleading enables the defense to predict the sentence the defendant faces if convicted." (*Vaquera*, at p. 717.) To make this prediction, a defendant must have "fair notice of the factual basis on which the prosecution is seeking an increased punishment and of 'the potential sentence.' " (*Ibid.*) In other words, Pool must have had notice that a sentence of 15 years to life could accompany a conviction of count 6, even though the placement of the enhancement and its referral to "the above offenses" suggests an application to counts 1 through 5.

Here, as Pool recognizes, "the 2024 consolidated information *named three victims*" and included a specific statutory reference to the multiple victim circumstance in section 667.61, subdivision (e)(4), thus providing notice of the factual basis for the One Strike sentence. (Boldface omitted.) Moreover, as Pool also acknowledges, there was no dispute regarding the term of the potential sentence—15 years to life—because the D.B. offense "is alleged to have occurred in 2004," and the 2004 version of the One Strike law "would have only subjected [Pool] to 15 years to life." (Stats. 1998, ch. 936, § 9.) Thus, although the second special allegation was located after count 5

13

due to "scrivener's error" caused by adding the D.B. claim (count 6) to the end of the K.T. and F.E. information, the consolidated information afforded Pool sufficient notice of both the factual basis for the One Strike sentence and the term of the sentence.[7] (*Vaquera, supra,* 15 Cal.5th at p. 717; see also § 960 ["No accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in manner of form which does not prejudice a substantial right of the defendant upon the merits"].)

Any ambiguity caused by the placement of the One Strike second special allegation before count 6 was dispelled by the People's trial brief, served on Pool nearly a month before the start of trial, which clarifies the special allegation's application to all of the charged counts. Specifically, after enumerating counts 1 through 6, the trial brief asserts that Pool "comes within the meaning of Penal Code section 667.61(e)(4) for having committed [the] enumerated offenses against multiple victims." The brief further clarifies that the "Second Special Allegation would apply at sentencing should the defendant be convicted of *any combination of counts involving more than one victim.*" (Italics added.) The parties discussed this trial brief at the pretrial hearing in connection with the motions in limine and witness list, but Pool did not seek clarification or raise any objection to the potential application of the second special allegation to count 6. Just as the trial court rejected Pool's pre-sentencing claim of insufficient notice, on this record, we,

_____

[7] Additionally, as the Attorney General argues, the consolidated information further alerted Pool of the potential One Strike sentence on count 6 by including a "NOTICE" following all counts, which stated: "Conviction of above offenses, if involving separate victims . . . , shall result in the court imposing full, separate, and consecutive sentences" pursuant to the One Strike law.

14

too, are unpersuaded. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1229 [lack of fair notice claim forfeited because defendant had been "actually notified . . . of the possible sentence he faced before his case was submitted to the jury" and "had sufficient opportunity to object to the indictment and request additional time to formulate a defense"].)

The parties agree, however, that the abstract of judgment incorrectly represents Pool was sentenced to 25 years to life on count 6, when the court orally sentenced Pool to 15 years to life. (*People v. Burke* (2023) 89 Cal.App.5th 237, 244 ["the oral pronouncement controls"].) Therefore, we will direct the abstract be corrected to match the court's oral pronouncement and affirm as corrected.

## B. Child Under the Age of 14 Circumstance (Counts 1, 2, 3, and 5)

After the close of evidence at the second trial, the court gave the jurors the One Strike multiple victim instruction (CALCRIM No. 3181): "If you find the defendant guilty of two or more sex offenses, you must then decide whether the People have proved the additional allegation that those crimes were committed against more than one victim in this case." But Pool did not request, and the court did not provide, a separate instruction to define "a victim who is a child under 14 years of age," as used in section 667.61, subdivision (j)(2), nor does Judicial Council of California Criminal Jury Instructions provide model instructions for section 667.61, subdivision (j)(2). During deliberations, the jury requested "a printed copy of section 667.61(e)(4), 667.61(b), and 667.61(j)(2) or the instructions pertaining to the second special allegation." After conferring with counsel, the court instructed the jury "to disregard those sections as listed in on the verdict form and just refer to the instruction 3181."

15

On appeal, Pool acknowledges the jury was instructed, and in fact found, that the victims were under the age of 14 as an element of the lewd acts alleged in counts 1, 2, 3, and 5,[8] but Pool complains the jury was never separately instructed to find the victims were "under 14 years of age" as required by the One Strike circumstance. (§ 667.61, subd. (j)(2).) He therefore asks us to "reduce the terms on counts 1, 2, 3 and 5 to 15 years to life."[9] We decline to do so.

A criminal defendant has a federal constitutional right to a jury trial on " 'any fact that exposes a defendant to a greater potential sentence.' " (*People v. Wiley* (2025) 17 Cal.5th 1069, 1078.) "Like a sentencing enhancement allegation, a 'One Strike allegation exposes a defendant to greater punishment than would be authorized by a verdict on the offense alone.' " (*Vaquera, supra,* 15 Cal.5th at p. 718.) Thus, "the trial court ha[s] a duty to instruct [the jury] on the elements of the one strike circumstances." (*People v. Jones* (1997) 58 Cal.App.4th 693, 709.) However, the failure to do so is harmless where "the jury necessarily resolved the factual question posed by the omitted instructions adversely to defendant under other, properly given instructions." (*Id.* at p. 709.) An error is harmless if "an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of

---

[8] CALCRIM No. 1110 provides model jury instructions for violations of section 288, subdivision (a) as charged in counts 1, 2, and 5, and requires a finding that "The child was under the age of 14 years at the time of the act." CALCRIM No. 1111, which provides model instructions for violations of section 288, subdivision (b) as charged in count 3, contains the same requirement.

[9] Section 667.61, subdivision (b) mandates a sentence of 15 years to life unless the conviction involves "a victim who is a child under 14 years of age." (§ 667.61, subd. (j)(2).) When the victim is under 14, the sentence increases to 25 years to life. (*Ibid.*)

the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements." (*People v. Lynch* (2024) 16 Cal.5th 730, 768.)

As to the lewd and lascivious acts charged in counts 1, 2, 3, and 5, the jury was instructed that the victim must be "under the age of 14 years at the time of the act." (See CALCRIM Nos. 1110 & 1111.) The verdict forms for each victim included an opportunity for the jury to make the related finding that the offense was committed on "A CHILD UNDER 14 YEARS OF AGE," and the jury ultimately convicted Pool as charged. As used in section 667.61, subdivision (j), "a child under 14 years of age" is not a term of art, and there is no suggestion that the phrase differs in meaning from its use in section 288, which requires that a named victim be, quite plainly, "a child who is under the age of 14" at the time of the commission of the alleged offense. (§ 288, subds. (a), (b)(1).) Thus, even though the court did not separately instruct the jury as to the meaning of "a victim who is a child under 14 years of age" as used in section 667.61, subdivision (j)(2), the jury necessarily found as part of its verdicts in counts 1, 2, 3, and 5 that K.T. and F.E. were children under the age of 14, and those findings suffice.

Further, the undisputed evidence at the second trial established that K.T. and F.E. were well under the age of 14 at the time of the commission of the charged offenses. Therefore, given the uncontradicted evidence of the victims' ages and the jury's finding that the victims were under the age of 14 as part of the substantive convictions, even if, arguendo, the failure to separately instruct the jury on section 667.61, subdivision (j)(2) was erroneous, it was harmless beyond a reasonable doubt. (See *People v. Luna* (2012) 209 Cal.App.4th 460, 468 ["any error in the jury instructions" on the

17

One Strike circumstances "was harmless beyond a reasonable doubt" because "the evidence overwhelmingly supported" the finding].)

### III. Restitution Fine

There are two types of restitution under California law: direct restitution to the victim (§ 1202.4, subd. (f)), and, as relevant here, a restitution fine (§ 1202.4, subd. (b)). (*People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1169 (*Dueñas*).) A restitution fine is mandatory unless the court finds "compelling and extraordinary reasons" for not imposing it. (§ 1202.4, subd. (b).) But the amount of the restitution fine is "set at the discretion of the court and commensurate with the seriousness of the offense." (*Id.*, subd. (b)(1).) For felonies, "the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)." (*Ibid.*)

Relying on *Dueñas*, Pool argues on appeal that the trial court erred "as a matter of law" in staying some fines and fees based on his inability to pay without also staying the $5,000 restitution fine or "explicitly finding that [Pool] had an ability to pay this fine." We agree with the Attorney General that Pool forfeited the argument by failing to object at sentencing "in 2024, long after the *Dueñas* opinion was issued."

While Pool acknowledges that he did not "object[] to the $5,000 restitution fine *after* the trial court imposed it," we question whether Pool sufficiently raised the issue at all. (Italics added.) Pool claims he preserved his challenge to the restitution fine by requesting the trial court "waive the discretionary fines and fees," but the restitution fine is not discretionary; it is a mandatory fine, only the amount of the fine that must be ordered is discretionary. (§ 1202.4, subd. (b); see also *Dueñas*, *supra*, 30 Cal.App.5th at p. 1172 ["the trial court is required . . . to impose a restitution fine"].) Thus, Pool's generic request to "waive the discretionary fines and fees" did not

18

adequately challenge the mandatory restitution fine and, even if it did, Pool's failure to object after the trial court ordered the fine forfeited the argument on appeal. (*People v. Nelson* (2011) 51 Cal.4th 198, 227 [inability to pay claim forfeited "by failing to object at [the] sentencing hearing"]; *People v. Greeley* (2021) 70 Cal.App.5th 609, 624 ["*Dueñas* had already been decided, and there is no reason why defendant could not have requested an ability-to-pay hearing"].)[10]

## IV. Sex Offender Fine

At sentencing, the trial court ordered but stayed a $300 sex offender fine issued pursuant to section 290.3. However, as the parties agree, the sentencing minutes and abstract of judgment fail to reflect the stay. Accordingly, we will direct the abstract of judgment be corrected to reflect that the section 290.3 fine is stayed. (*People v. Burke, supra*, 89 Cal.App.5th at p. 244.)

## DISPOSITION

We direct the indeterminate abstract of judgment (form CR-292) be corrected to remove count "6" from paragraph 6(d) (reflecting a sentence of 25 to life) and insert count "6" in paragraph 6(a) (reflecting a sentence of 15 to life) and check the accompanying box. We also direct the indeterminate abstract of judgment be corrected to insert the word "stayed" after "$300 pursuant to PC 290.3" in paragraph 12.

We affirm the judgment as corrected and order a copy of the corrected abstract be forwarded to the California Department of Corrections and Rehabilitation.

---

[10] Notably, the record suggests Pool had substantial assets in Mexico that could have undermined any claim for a reduced restitution fine. But, because we determine forfeiture, we need not consider this evidence or Pool's potential ability to pay the ordered fine.

19

DESAUTELS, J.

We concur:

STEWART, P. J.

RICHMAN, J.

*People v. Pool* (A171476)